# PENMAN *v.* ST. PAUL FIRE AND MARINE INSURANCE COMPANY.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 67. Argued January 7, 10, 1910.—Decided February 21, 1910.

The rule of *ejusdem generis* is a rule of interpretation, and even if it should be applied more liberally to contracts of insurance than to contracts of other kinds, it cannot be so applied as to exclude "blasting powder" from a prohibition to keep or allow on insured premises certain specified explosives and "other explosives."

Where the policy furnishes the only way by which its terms can be

waived and expressly provides against modification by customs of trade or manufacture or by agents, and are unambiguous, courts cannot admit parol testimony to alter the written words of the contract. *Northern Assurance Company* v. *Grand View Building Association*, 183 U. S. 308.

151 Fed. Rep. 961, affirmed.

THE facts, which involve the liability of a fire insurance company on a policy of insurance, are stated in the opinion.

*Mr. A. J. Truit*, with whom *Mr. Frederic D. McKenney* and *Mr. B. M. Clark* were on the brief, for petitioner:

The action is governed by the law of Pennsylvania. 22 Am. & Eng. Ency. of Law, 1349; *Mann* v. *Salsberg*, 17 Pa. Super. Ct. 280; *Musser* v. *Stauffer*, 192 Pa. St. 398; Judiciary Act of 1789, c. 20, § 34. The knowledge and act of an insurance company's local agent connected with the risk is the knowledge and act of the company itself. *Caldwell* v. *Fire Assn.*, 177 Pa. St. 492; *Davis* v. *Insurance Co.*, 5 Pa. Super. Ct. 506, 512; *Phila. Tool Co.* v. *British Am. Assurance Co.*, 132 Pa. St. 236; *People's Ins. Co.* v. *Spencer*, 53 Pa. St. 353; *Humphreys* v. *Nat. Ben. Assn.*, 139 Pa. St. 264.

Evidence is admissible to show the understanding and intent of the parties and the customs connected therewith at the time the insurance was contracted. *Graybill* v. *Fire Ins. Assn.*, 170 Pa. St. 75; *Lancaster Co.* v. *Fire Ins. Co.*, 170 Pa. St. 151; *W. & A. Pipe Lines* v. *Insurance Co.*, 145 Pa. St. 346; *Helme* v. *Phila. Life Ins. Co.*, 61 Pa. St. 107; *Pittsburg Ins. Co.* v. *Frazee*, 107 Pa. St. 521; *Lutz* v. *Insurance Co.*, 205 Pa. St. 159; *Machine Co.* v. *Insurance Co.*, 173 Pa. St. 53; *Bently* v. *Insurance Co.*, 191 Pa. St. 276; *McCaffery* v. *Knights of Columbia*, 213 Pa. St. 609.

Where a policy of insurance is susceptible without violence of two interpretations that which is more favorable to the insured should be adopted. *Teutonia Fire Ins. Co.* v. *Mund*, 102 Pa. St. 94; 16 Am. & Eng. Ency. of Law, 862; 17 Am. & Eng. Ency. of Law, 25. The expression in a contract of one or

more things of a class implies the exclusion of all not expressed
though all would have been implied had none been expressed.
*Higgins* v. *Eagleton,* 13 Misc. (N. Y.) 223; *S. C.,* 68 N. Y. St.
82; *O'Niel* v. *Van Tassel,* 137 N. Y. 297; *Cree* v. *Bristol,* 66
N. Y. St. 518; *Hummerquist* v. *Swensson,* 44 Ill. App. 627.

Facts of public notoriety relating to the subject of a con-
tract must be presumed to have been known to the parties.
*Woodruff* v. *Woodruff,* 52 N. Y. 53; *McMillen* v. *Titus,* 222
Pa. St. 500.

The burden is on the insurance company to prove the ex-
istence of the condition and its violation.  16 Am. & Eng.
Ency. of Law, 955; *Dougherty* v. *Insurance Co.,* 154 Pa. St. 386.

A parol waiver by an agent of the insurer of a condition of
the policy is binding on the insurer.  *Coursin* v. *Pa. Ins. Co.,*
46 Pa. St. 323; *McFarland* v. *Kit. Ins. Co.,* 134 Pa. St. 590.

The burden was on the insurance company to show that
blasting powder, which was not among the prohibited articles
named in the condition, was of the same nature, as dangerous
and inflammable, as dynamite and gunpowder, and if the same
as gunpowder that a quantity in excess of twenty-five pounds
was kept on the premises.

There was no proof that benzine was of like nature with
camphene or spirit gas.  It is not a matter of which the court
will take judicial notice.  It is a question of fact, to be found
by a jury upon evidence.  *Mears* v. *Humboldt Ins. Co.,* 92
Pa. St. 15, 19; *Wood* v. *Northwestern Ins. Co.,* 46 N. Y. 421.

The universal rule of legal construction and interpretation
is that general words following an enumeration of particu-
lars are to have their generality limited by reference to the
preceding particular enumeration and to be construed as in-
cluding only all other articles of the like nature and quality.
*Sandinan* v. *Breach,* 7 B. & C. K. B. Reps. 100; *Brooks* v.
*Lord Kensington,* 14 Eng. Ruling Cases, 723; *Alabama* v.
*Montague,* 117 U. S. 602; *United States* v. *Celluloid,* 82
Fed. Rep. 627; *Newport &c. Co.* v. *United States,* 61 Fed.
Rep. 488; *Crystal Sp. Distillery Co.* v *Cox,* 49 Fed. Rep. 555;

*Erwin* v. *Jersey City,* 60 N. J. L. 145; *Livermore* v. *Camden
County,* 29, N. J. Law, 247; *King* v. *Thompson,* 87 Pa. St. 369;
*Renick* v. *Boyd,* 99 Pa. St. 555; *Pardee's App.,* 100 Pa. St.
412; *Bucher* v. *Commonwealth,* 103 Pa. St. 528.

*Mr. William D. Mitchell,* with whom *Mr. W. K. Jennings,
Mr. D. C. Jennings, Mr. Jared How, Mr. Pierce Butler* and
*Mr. George Hoke* were on the brief, for respondent:

To keep, use or allow blasting powder upon the premises
was clearly prohibited by the terms of the written contract,
and no application of the rule of *ejusdem generis* can exclude
blasting powder from the words "other explosives" in the
policy. *Renick* v. *Boyd,* 99 Pa. St. 555; *United Ins. Co.* v.
*Foote,* 22 Ohio St. 340. See statutes, 1 Mass. Rev. Laws, 1902,
p. 880, c. 102, § 105; So. Car. Civ. Code, 1902, § 2156.

A violation by a tenant has same effect as violation by the
insured. *L'pool & Lon. & Globe* v. *Gunther,* 116 U. S. 113;
*Diehl* v. *Insurance Co.,* 58 Pa. St. 443.

The condition included even a temporary presence of the
prohibited article. 180 Pa. St. 257. Extrinsic or parol evi-
dence is not admissible to alter the meaning of the written
contract. *Northern Ins. Co.* v. *Grand View Assn.,* 183 U. S.
308; *West. Assn. Co.* v. *Rector,* 85 Kentucky, 294; *Citizens'
Ins. Co.* v. *McLaughlin,* 53 Pa. St. 485, distinguished, and see
*McKeesport Co.* v. *Insurance Co.,* 173 Pa. St. 53; *Lutz* v.
*Royal Ins. Co.,* 205 Pa. St. 159.

The question in the case is not governed by the decisions
in the State of Pennsylvania. *Commonwealth* v. *Huntzinger,*
98 Pa. St. 41. If the contract did not express the real inten-
tion of the parties as written the petitioner's remedy is to seek
its reformation in equity. *Nor. Ins. Co.* v. *Grand View Assn.,*
203 U. S. 106.

MR. JUSTICE McKENNA delivered the opinion of the court.

This is an action to recover the sum of $2,600, with interest,
upon a fire insurance policy for the value of a building de-

.stroyed by fire.  The action was brought in the Court of Common Pleas of Jefferson County, Pennsylvania, and by the insurance company, the respondent herein removed to the United States Court for the Western District of Pennsylvania.

Plaintiff's statement, to use the local name for her pleading, alleged a contract of insurance whereby the insurance company insured, for the term of three years, against direct loss by fire, "a two-story shingle-roofed building, 28 x 96, and additions," etc., to be occupied by tenants as dwellings, and situated in Punxsutawney, Jefferson County, Pennsylvania.  Payment of the premium and charges was alleged, also the total loss of the building by fire.  A copy of the policy was attached to the statement and made a part of it.  The policy contained the following covenant:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used or allowed on the above-described premises benzine, benzole, dynamite, ether, fireworks, gasoline, Greek fire, gunpowder, exceeding 25 lbs., in quantity, naphtha, nitro-glycerine, or other explosives."

The policy also contained the following covenant:

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto, and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

The case was tried to a jury and resulted in the verdict for the plaintiff, upon which judgment was duly entered. A motion for a new trial was denied. The judgment was reversed by the Circuit Court of Appeals. 151 Fed. Rep. 961. This writ of certiorari was then allowed. 209 U. S. 543.

The question in the case is the effect of the covenants which we have quoted. It was raised in the Circuit Court by objection to certain testimony, which was admitted, and the denial of certain instructions which were requested.

The property is situated in the coal mining regions of Pennsylvania, and the testimony shows that an explosion preceded or was coincident with the fire as its cause or effect. Indeed, it seems to be clear that the explosion was caused by one of the tenants throwing lighted "squibs" in the air "for fun." And there was testimony that it was the custom of miners to keep more or less blasting powder in their dwellings. The custom seems to have arisen on account of a law of Pennsylvania, which provides that "no powder or high explosive shall be stored in any mine and no more of either article shall be taken into the mine at any one time than is required for any one shift unless the quantity be less than five pounds. . . ."

In supplement to this testimony the Circuit Court admitted, over the objection of the company, the testimony of the agent who placed the insurance upon the property, to the effect that he had taken considerable risks as agent for defendant company on miners' dwellings; that he knew of the custom of miners to keep blasting powder in their dwellings; that he knew that the building insured was in seven compartments, "seven miners' dwellings," to be occupied by seven different families, and that he "increased the rate by reason of the fact that this building was to be occupied by miners, and having knowledge that they kept more or less blasting powder about their dwellings." And he also testified that, after he had placed the risk, the special agent of the company went with him, looked at the risk and said it was satisfactory, after

having made inquiry as to the rate. He expressed the increase in percentage as "one and a quarter for one year, or two and a half for two years." He also charged an extra premium for finishing.

He increased the premium, he further testified, because he "thought it was going to be occupied by coal miners," and "because there was seven of them." The increase was from one and a quarter per cent to two and a half per cent, but he did not know what he would have charged if the building had not been for coal miners. And further, that he was not told that the building was to be occupied by coal miners, he knew that from his experience in the business. Mrs. Penman did not tell him, nor did he tell her that he had increased the rate, because she might possibly have it occupied by miners, but he told the special agent of the company "that that entered into the calculations." He did not report it on the form because it was not his custom to do so. To the question whether it was special business he was "performing rather than acting for the company," he answered, "yes."

The policy recited that the building insured was "in process of erection with privilege to finish and to be occupied by tenants as dwellings," and that "in consideration of the extra premium of three and 90–100 dollars ($3.90) 30 days' permission is hereby granted to finish the building." There was evidence showing that blasting powder is a lower degree of explosive than gunpowder or dynamite, and that the latter is a higher degree than gunpowder.

In view of this testimony the Circuit Court decided, as it said, that though ordinarily it was "the duty of a court to construe a written instrument and instruct the jury what its terms meant," he would leave to the jury "as a question of fact" for it "to determine, whether, under the evidence and the facts proven here, blasting powder" was "included in the term 'other explosives.' " Entertaining that view, the court refused to instruct the jury, as requested by the company, "that under the evidence the verdict should be for the

defendant." The court refused other requests which were
based on the controlling effect of the policy.

In passing upon the motion for a new trial the Circuit
Court reasserted the view that it was for the jury to "deter-
mine whether blasting powder was one of the prohibited ar-
ticles which was to invalidate the policy." The court ob-
served: "It was contended by one side that it was embraced
under the term 'other explosives;' by the other, that it was
not." The court further said: "While of course blasting
powder is an explosive, and is therefore covered by the ge-
neric term 'other explosives,' yet the fact that other explosives
of the general character of blasting powder, and those of a
much more dangerous character than blasting powder, to wit,
dynamite and gunpowder, of which twenty and five pounds
were permitted, were specified, it was contended that the ex-
press mention of these more dangerous powders evidenced
an intent not to cover the less dangerous article of blasting
powder under the general term 'other explosives.'" To the
last contention the court, as we have seen, yielded, and re-
jected the case of *The Northern Assurance Co.* v. *Grand View
Building Asso.*, 183 U. S. 308, as not decisive, by saying that
"in that case there was no question as to what the policy
provided, in the present the crucial question was as to what
the policy in question covered by the term 'other explosives.'"

The majority of the Circuit Court of Appeals took another
view. It found nothing obscure in the language of the policy,
and nothing therefore to excuse the Circuit Court from ex-
ercising the duty of construing it. Answering the contention
that the words "or other explosives" should not be held to
include explosives of lower power than gunpowder or dyna-
mite, it was said: "Such an application of the maxim *noscitur
á sociis* is too narrow."

It was pointed out that the enumeration of explosives in-
cluded other explosives than gunpowder and blasting powder,
and that there was nothing in the record to show their rela-
tive degrees of power, nor whether they or any of them were

of less explosive power than gunpowder or dynamite. Their relative power, it was said, was not a matter of common knowledge, and if the general words "or other explosives" were to be or could be limited by such relation or their relation to blasting powder, the burden was upon the plaintiff to show it, as those words "in their literal and natural meaning included blasting powder." It was hence concluded that "to hold, under the present proofs, that the general words 'or other explosives' do not include blasting powder merely because it is a less dangerous explosive than dynamite or gunpowder, when it may be more dangerous than Greek fire, benzine, benzole, ether, gasoline, or naphtha, is virtually to decide arbitrarily that no meaning or effect shall be given to the general words. We are satisfied that this cannot be done, and that, as the proofs stand, the general words include blasting powder."

The court thus deciding that the words of the policy included blasting powder, further decided that the Circuit Court erred in admitting parol testimony to vary its terms, and also erred in not directing a verdict for the company.

A member of the court dissented from both propositions. His argument was elaborate and would not be adequately represented by condensation. It asserted the view of the Circuit Court and the contention of the plaintiff. It considered that by the rule of *ejusdem generis* blasting powder was not covered by the words "other explosives," and by them were meant explosives of the same power as those enumerated, which it seems to have been assumed blasting powder was not. It was considered besides that the words could be given a meaning by the custom of miners and the industrial conditions which existed in the neighborhood, and also from the knowledge and conduct of the company's agent when the insurance was placed. Cases from Pennsylvania were cited to support that proposition, of which we may select as representative *Machine Company* v. *Insurance Company*, 173 Pa. St. 53, where the policy of insurance on two buildings, one a

foundry and machine shop, and the other a pattern shop, was considered. The policy covered the patterns in the pattern shop by these words, "on patterns therein one thousand dollars." The pattern shop was from fifteen to twenty feet from the foundry in which the fire occurred, and in which the patterns were destroyed, where they were taken the evening before the fire for actual use next day in accordance with the orders and customs in that and other shops in the use of patterns. It was found by a jury returning a special verdict that such use was a reasonable one and answered the convenient operation of such plants, and that the agent of the defendant company examined the shops and patterns and buildings before taking the insurance. The court said:

"The policy sued on in this case was issued to a manufacturing company and covered the buildings, machinery, fixtures and appliances in daily use in the business of the company. The rules of construction applicable to such a contract of insurance are well settled. The object of the contract is indemnity against the loss by fire of the business plant, or any portion of it, while used and occupied by the owners in the manner and for the purposes for which it was designed. If its provisions are susceptible of two or more interpretations, that one should be adopted that will make the contract effective for the protection of the insured. In other words, the contract should be liberally construed in aid of the indemnity which was in contemplation of the parties who made it. *W. & A. Pipe Lines* v. *Insurance Co.*, 145 Pa. 346.

"Again, an insurance company issuing a policy upon a business plant, or any portion of it, is chargeable with knowledge of the customary methods of conducting the business in which the property insured is used. *Pipe Lines* v. *Insurance Company, supra.* This rule is not limited to insurance upon property in use for manufacturing or other business purposes. It was applied in the construction of a policy issued upon a dwelling house in *Doud* v. *Citizens' Insurance Company*, 141 Pa. 47, and in *Roe* v. *Dwelling House Insurance Co.*, 149 Pa.

94. It was applied to a policy of insurance upon a horse in *Haws* v. *Fire Association of Phila.*, 114 Pa. 431. Still another rule of construction is that the circumstances surrounding the making of the contract and affecting the subject to which it relates form a sort of context that may properly be resorted to for aid in determining the meaning of the words and provisions of the contract. *Bole, Assignee,* v. *New Hampshire Fire Ins. Co.,* 159 Pa. 53; *Graybill* v. *The Penn Township Mutual Fire Ins. Co.,* 170 Pa. 75."

We have stated the rulings of the courts below, because they accurately exhibit the contentions of the parties and the questions for decision and with such fullness of argument that there is not much more for this court to do than to select and concur. The Court of Appeals decided, as we have seen, that under the terms of the policy blasting powder could not be "kept, used or allowed" on the insured property, and that such prohibition was not waived by the knowledge and acts of the company's agent. We concur in this, and we think the reasoning by which it was supported is conclusive. The rule of *ejusdem generis* is a rule of interpretation, and granting, *arguendo,* it should be applied more liberally to contracts of insurance than to contracts of other kinds, yet we think it would be giving it too much force to yield to the contention of petitioner. Blasting powder is an explosive, and one of power; it is therefore capable of producing the result that the provision of the policy was intended to guard against. We are given no tests, as the Court of Appeals said, and we certainly may not assume them, of a comparison of it with the explosives which are enumerated, except dynamite and gunpowder. The law of Pennsylvania, as we have seen, has given it character and has guarded against its destructive force.

We think also that the policy furnishes the only way by which its terms can be waived. It provides against modifications by the usage or custom of trade or manufacture. It guards against any acts of waiver of its conditions or a change of them by agents. It provides that such waiver or change

"shall be written upon or attached" to the policy. The company could have used no words which would have been more explicit. There is no ambiguity about them. Parol testimony was not needed nor admissible to interpret them. They constituted the contract between the company and the insured. No agent had power to change or modify that contract except in the manner provided. This was decided in *Northern Assurance Company* v. *Building Association, supra.* Any other ruling would take from contracts the certain evidence of their written words and turn them over for meaning to the disputes of parol testimony.

The Pennsylvania cases cited by the petitioner do not militate with the rule there announced. If they did, it might be open to controversy how far they were binding on this court. *Kuhn* v. *Fairmont Coal Company*, 215 U. S. 349.

*Judgment affirmed.*