### MacKELVIE v. MUTUAL BEN. LIFE INS. CO. OF NEWARK, N. J. *

(Circuit Court of Appeals, Second Circuit. January 18, 1923.)

No. 114.

1. **Courts ⊜ˌ372(6)—Liability on policy before payment of first premium is question of general jurisprudence.**
   The liability of a life insurance company on a policy issued by it before the payment of the first premium is a question of general jurisprudence, as to which the decision of no state court is controlling.

2. **Insurance ⊜ˌ137(2)—Provision policy will not take effect until premium is paid will be enforced.**
   A provision in a life insurance policy that it will not take effect unless the first premium or agreed installment thereof shall be actually paid during the lifetime of the insured is valid and will be given effect.

3. **Insurance ⊜ˌ141(1)—Restriction on agent's authority precludes waiver, except by company.**
   Under a provision in a life insurance policy that agents are not authorized to make, alter, or discharge contracts, a waiver of a policy provision relied on by insured must be one by the company itself, and no attempted waiver by an agent will be treated as its equivalent.

4. **Insurance ⊜ˌ141(2)—Company held not to have waived requirement of prepayment of premium.**
   Where a life insurance company rejected an application because the amount was greater than it could carry on any one life, but sent a policy for the maximum amount it could insure, with a receipt for the payment of the first premium to its agent, with directions not to deliver them to insured until he had executed a new application for the reduced amount and had paid the premium, the delivery by the agent to the insured of the policy and receipt before the premium was paid was not a waiver by the company of the clause requiring prepayment of the premium, there being no evidence of a practice by the company to permit its agents to make such deliveries.

5. **Insurance ⊜ˌ130(7)—Minds of parties held not to have met on contract.**
   Where the original application for insurance was rejected, because the amount called for exceeded the amount the company would write on any one life, and the company sent a policy for the maximum amount it would write to its agent, with instructions not to deliver to insured until he had signed a new application for the reduced amount, and insured died before he had signed a new application, there

⊜ˌFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 43 Sup. Ct. 522, 67 L. Ed. ——.

was no meeting of the minds of the parties essential to establish the contract, even though the agent had delivered to insured the policy for the reduced amount.

**6. Insurance ☞141(3)—Delivery of receipt by agent held not to estop denial of payment of premium.**

Where an agent, in violation of his instructions and the provisions of the policy, delivered a receipt for the first premium to insured before that premium was paid, but the policy contained a clause restricting the authority of the agent to waive any of its terms, the company was not thereby estopped to deny the payment of the premium, there being no misrepresentation on which the insured was entitled to act, and no prejudice resulting to him from the delivery of the policy.

**7. Insurance ☞668(3)—Issues of fact need not be submitted to jury, where as a matter of law contract was never completed.**

Even though there were some issues of fact raised by the evidence in an action on a life insurance policy, it was not error to direct a verdict for defendant without submitting those issues to the jury, where as a matter of law under the undisputed facts the policy had never taken effect.

In Error to the District Court of the United States for the Southern District of New York.

Action by law by Jeanette L. MacKelvie against the Mutual Benefit Life Insurance Company of Newark, N. J. Judgment for defendant on directed verdict, and plaintiff brings error. Affirmed.

Chadbourne, Babbitt & Wallace, of New York City (Roger B. Hull and Charles A. Buckley, both of New York City, of counsel), for plaintiff in error.

Rounds, Schurman & Dwight, of New York City (Charles E. Hughes, Jr., and Thomas L. Ennis, both of New York City, of counsel), for defendant in error.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. This is an action brought upon a policy of insurance issued by the defendant company in the amount of $98,156, on the life of Neil B. MacKelvie and payable to Jeanette L. MacKelvie, his wife. The policy is No. 849,153 and is dated August 7, 1918. Neil B. MacKelvie died on August 17, 1918, and on May 23, 1919, the plaintiff presented to defendant due proof of his death. The plaintiff is a citizen of the state of New York and a resident of the Southern district. The defendant is a corporation organized under the laws of the state of New Jersey. At the conclusion of the trial the court directed a verdict for the defendant.

The evidentiary facts are shown by undisputed proof. On June 12, 1918, Mr. MacKelvie signed the defendant's application form for insurance in the amount of $100,000. This application was sent to the home office of defendant in Newark, N. J. On its arrival at that office it was examined by the policy department and various notations and interlineations were made thereon. Among them was a statement that the defendant already had a risk upon the life of the applicant in the sum of $1,844, and that, as the defendant's limit of insurance upon any one life was $100,000, the defendant was unwilling to issue a policy

in the full amount applied for. The agent was informed that the defendant could not proceed with the matter further until the application was changed respecting the amount of the insurance to be issued; the company being unable to issue new insurance to him for more than $98,156. On August 7th the defendant sent to its agent at Chicago the policy sued upon, with instructions not to deliver it until certain conditions were complied with; and the agent at Chicago, disregarding the defendant's explicit directions, forwarded the proposed policy and the premium receipt, countersigned by him, and the proposed new application forms to the agent of another insurance company at Milwaukee. In the letter which accompanied the papers the Chicago agent wrote:

"Kindly have Mr. MacKelvie sign the inclosed new part 1 in the place indicated; also the inclosed form 482 in the two places indicated on the front and one place indicated on the back. I will witness the signatures."

The Milwaukee agent received the papers on August 10th, and at once sent them to Mr. MacKelvie in New York, together with a letter in which he said:

"I also inclose two amendments, which the company would be pleased to have you sign as indicated. Document No. 252 is to be signed in one place only, where the cross is made; but document No. 482 is to be signed in two places, on the first page and one place on the second page. I should be pleased to have you return both copies to me. They will be witnessed by George Pick."

The policy which was thus delivered to Mr. MacKelvie contained in prominent type on the first page the following:

"This policy will not take effect unless the first premium or agreed installment thereof shall be actually paid during the lifetime of the insured. * * * Agents are not authorized to make, alter or discharge contracts."

The premium receipt stated:

"Policy No. 849153 on the life of Neil B. MacKelvie is in force until June 9, 1919, settlement of the premium payable on delivery thereof, $2,-841.62 having been made. Not valid unless countersigned by the agent.
"Geo. Pick, Agent. Saml. W. Baldwin, Treasurer."
"Agents are forbidden to receive for the cash due anything but cash, or to alter receipts. Valid receipts show no alteration nor erasure. Checks or drafts are accepted subject to collection.
"N. B.—All premiums are due and payable at the company's office in Newark; but if payment is made to authorized agents, upon receipts issued by the company, signed by the treasurer and countersigned by such agents, it will be valid. Agents are not authorized to make, alter, or discharge contracts, or waive forfeiture or grant permits."

On August 13, 1918, Mr. MacKelvie wrote the Milwaukee agent as follows:

"I am in receipt of your favor of the 10th instant, inclosing policy of the Mutual Benefit Life Insurance Company, and before making payment on the premium I want to call your attention to the fact that they ask me to answer questions, such as, have you got any expectation or intention of enlisting in the army or navy, or of becoming a member of any military or naval organization? I cannot very well answer that question, because this next draft will include me, and I certainly would not want to go on record as not having any intention of joining either the army or navy,

as I certainly will if it is necessary, either in active service or in some position here. You might advise me in regard to this matter and oblige."

On receipt of that letter the agent at Milwaukee on August 15th wrote in reply as follows:

"I have your letter of the 13th inst., which I have read with interest, and I can readily see that your point is well taken. I talked with Mr. George Pick, the Mutual Benefit general agent, over the telephone, and he advised me that the company, of course, understood that you would be included in the next draft, and what it desired to know was whether you had already made arrangements to enlist in the service. It is just possible that, if you answered the doubtful question 'See letter,' and then wrote a letter stating just what you had in mind, it might be perfectly satisfactory to the company. As I understand it, the government will not allow any more enlistments when the next draft goes in, and all of the men chosen will be selective. I expect a letter from the general agent to-morrow, and I shall write you again regarding the matter. Until you hear from me, therefore, next week, I would suggest that you hold the papers."

There is no direct evidence as to whether Mr. MacKelvie ever received the above letter. As already stated, Mr. MacKelvie died on August 17th at his home on Sands Point, Long Island. The letter was addressed to him at his office in New York City. He died without having paid the first premium on the policy, or indicated in any way that he would accept the policy tendered in the amount of $98,156. After his death the policy and the premium receipt, which had been sent him from Milwaukee with the new application forms, were found in his desk. Mrs. MacKelvie demanded payment of the policy, and, that being refused, commenced the present action.

[1] The question which these facts present is one of general jurisprudence, and the decision of no state court can be regarded as controlling. Ætna Life Insurance Co. v. Moore, 231 U. S. 543, 34 Sup. Ct. 186, 58 L. Ed. 356. In that case the place of contract was admittedly Georgia, and it was argued that a decision of the Georgia court was controlling. The Supreme Court held it was not controlling.

[2, 3] The law is settled in this court that, when a life insurance policy contains, as this one did, the provision that it "will not take effect, unless the first premium or agreed installment thereof shall be actually paid during the lifetime of the insured," the provision means exactly what it says and will be enforced. And if the policy contains, as this one did, the express provision that "agents are not authorized to make, alter or discharge contracts," the waiver relied on must be one by the company itself, and no attempted waiver by an agent will be treated as its equivalent. In Pennsylvania Casualty Co. v. Bacon, 133 Fed. 907, 67 C. C. A. 497, a policy of insurance stated that it was not to take effect "unless the premium is actually paid previous to any accident upon which claim is made," and it provided that no waiver should be binding on the insurer unless indorsed on the policy and signed by the president or secretary of the company. This court held that a subagent had no authority to accept a note in lieu of cash for the first premium, and to thereby waive the provisions of the policy. The decisions of the Supreme Court in Northern Assurance Co. v. Grand View Building Association, 183 U. S. 308, 22 Sup. Ct. 133, 46

L. Ed. 213; Penman v. St. Paul Fire & Marine Ins. Co., 216 U. S. 311, 30 Sup. Ct. 312, 54 L. Ed. 493; Ætna Life Insurance Co. v. Moore, 231 U. S. 543, 34 Sup. Ct. 186, 58 L. Ed. 356; Lumber Underwriters v. Rife, 237 U. S. 605, 35 Sup. Ct. 717, 59 L. Ed. 1140; Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 Sup. Ct. 676, 60 L. Ed. 1202—support the same doctrine. The provisions that a policy of life insurance shall not take effect unless the first premium is actually paid in cash during the lifetime of the person insured is valid and will be enforced according to its terms.

[4] The record is absolutely barren of any evidence that the defendant itself waived the condition requiring the prepayment of the first premium. The defendant never came in direct contact with MacKelvie. It never spoke to him, except through the written terms of the policy and premium receipt, and those were sent to him by agents in violation of the defendant's express instructions. What the defendant said to him through the policy was that, no matter what any agent might say to him, the policy could not become effective unless the premium was paid during his lifetime; and what the defendant said to him through the receipt was that no matter what any agent might say to him, the first premium could not be paid otherwise than by cash. There is not a scintilla of evidence in the case which justifies an inference that the defendant ever deviated from its position that its agents were without authority "to make, alter or discharge contracts," and that the policy could not take effect unless the premium should be actually paid during MacKelvie's lifetime.

If the evidence showed that, notwithstanding the provisions of the policy, the defendant in fact permitted its agents to take notes, instead of cash, for premiums, and that it made a practice of receiving from the agents the notes which they took, the defendant might have no ground to justify its position that it gave no authority to the agents to do these things, when it was in the habit of ratifying such acts upon their part. In such cases the company would clearly be bound. Knickerbocker Insurance Co. v. Norton, 96 U. S. 234, 24 L. Ed. 689; Metropolitan Life Insurance Co. v. Williamson, 174 Fed. 116, 98 C. C. A. 90.

[5] But, quite apart from the nonpayment of the first premium, which in itself is sufficient to prevent a recovery upon the policy sued upon, we may point out that there is no evidence that the minds of the parties ever met upon any proposition involved in the policy sued upon. The application was for a policy of $100,000. The company could not issue the policy in the amount applied for, or for more than $98,156. It therefore had its agent send him a new application form, which he was to sign before the policy was to issue. And the New York Insurance Law (section 58) required that the policy and application should express the entire contract between the parties, and that the application should be attached to the policy. A policy for $98,156 could not be issued upon an application for $100,000 without the assent of the insured thereto, and if an application for $100,000 were attached to a policy for $98,156, the policy and the application attached thereto would not express the entire contract between the parties. When MacKelvie died on August 17, he had never signed the appli-

cation forms, had never assented to the policy, and had never paid the first premium. His original application was never accepted by the defendant, and the sending to him of the policy by the agent in violation of his instructions, if it could be treated as valid, was nothing more than a counter proposal which was never accepted. The result was that the minds of the parties never met, and no contract was ever concluded between them. Mutual Life Insurance Co. v. Young, 23 Wall. 85, 23 L. Ed. 152; Minneapolis, etc., Ry. Co. v. Mill Co., 119 U. S. 149, 7 Sup. Ct. 168, 30 L. Ed. 376; McNicol v. New York Life Insurance Co., 149 Fed. 141, 79 C. C. A. 11; Travis v. Nederland Life Insurance Co., 104 Fed. 486, 487, 488, 43 C. C. A. 653.

[6] The complaint appears to have been drafted upon the theory that it alleged facts constituting an estoppel; and it is claimed by the appellant that because of the delivery of the policy the defendant estopped itself from denying the payment of the first premium. The plaintiff's claim of estoppel, so far as the decisions in the federal courts lend it support, rests upon Mutual Reserve Life Ins. Co. v. Heidel, 161 Fed. 535, 88 C. C. A. 477. In that case the policy stated that:

"This contract shall not take effect until the policy is delivered to the insured in person and the first premium paid in cash hereon during his lifetime. * * * "

The court below held that evidence was inadmissible to show that the insured had paid only a part of the first premium. Judge Sanborn, writing for the Circuit Court of Appeals in the Eighth Circuit, said:

"The delivery of the policy constituted an acknowledgment by the company that the first annual premium had been paid, and the delivered policy was competent and persuasive evidence of that fact. * * * The delivery of the policy and this acknowledgment conclusively estopped the company from denying that the contract of insurance was in existence and that it was effective from the time of the delivery of the policy until it was forfeited for some other reason than the failure to pay the first annual premium when it became due."

There is, however, nothing in the Heidel Case to show that the policy was delivered by an agent. Apparently the *company* itself sent the policy to the insured, and the *company* itself accepted from him a first bimonthly premium in lieu of the full annual premium due upon the delivery of the policy. The arrangement is not shown to have been made by an agent, and, if not, it must have been made directly with the company. And the latter introduced evidence, which the trial court afterwards struck out, that the company had sent to Heidel a notice that an alleged bimonthly premium would become due on August 1, 1901, and "that, if not paid, the policy *would lapse* and the insurance *would be forfeited*."

The facts of that case are so different from the facts in this, in which the policy was not delivered by the company, but by an agent in violation of his instructions, that we are unable to see that it affords an authority applicable to the facts of the case before us.

In Bostick v. New York Life Ins. Co., 284 Fed. 256, the policies state that they were not to take effect until delivered and the first premium thereon paid. The policies were found in the office of the in-

sured after his death, having been delivered to him a few days before for his inspection. He had not paid or promised to pay the premiums. The possession of the policies containing recitals of the payment of the first premium were held by the Circuit Court of Appeals in the Fifth Circuit to be prima facie evidence only, and that evidence was admissible to show that the first premium had not been paid, and that the insured took the policies to examine them. The recitals in the policies worked no estoppel.

In Drilling v. New York Life Ins. Co., 234 N. Y. 234, 137 N. E. 314, a policy of insurance was applied for by the husband and the insurance it provided was payable to the wife. On the husband's application, and immediately above his signature, appeared a statement that the insured agreed that the insurance was not to take effect unless:

"(1) The policy is delivered to him while he is in good health; (2) the first premium be paid during his good health; and (3) that the agent taking the application cannot and shall not modify or waive these two requirements."

The company accepted the application and sent the policy to its agent, who took it to the applicant, who was unprepared to make the payment at that time. The agent then said to him, "Never mind, you can have it anyway," and left the policy with him; the agent having agreed to get the money and make the payment for him. Before the agent borrowed the money and paid the premium, the insured came down with erysipelas, of which disease he died within two or three days after the agent made the payment. Prior to the agent's payment of the premium she knew of the insured's illness, and it was claimed that the agent's knowledge was the knowledge of the company, and that the acceptance of the premium with this knowledge amounted to a waiver by the company of the second condition in the application. The agent, in undertaking to pay the premium, did not act for the company, but for the applicant, and the knowledge which she attained while acting as his agent could not be attributed to the company. But the Court of Appeals went further, and held in a unanimous opinion that the agent had no authority to waive either of the conditions in the written application; it having been agreed that the agent taking the application could not modify or discharge the contract, or waive any of the company's rights or requirements. Judge Crane, who wrote for the court, said, in denying that the acts of the agent constituted a waiver, that if they did—

"then as far as I can see no contract could ever be made by an insurance company limiting the power of an agent. Surely the doing of an act cannot of itself waive an agreement that it should not be done. * * * I can find nothing to indicate that the company or its general agents ever authorized Rose Stedman to waive any of the provisions of the application, or that they are estopped from insisting that she did not have such authority."

The decision in the Drilling Case makes unnecessary any comment by us upon Thompson v. Travelers' Insurance Co., 198 App. Div. 231, 190 N. Y. Supp. 338, relied upon by the plaintiff herein as asserting a contrary doctrine.

We are satisfied that, upon the authorities and upon principle, the doctrine of estoppel is wholly inapplicable to the facts of this case. The basis of estoppel, and of waiver, is that the party estopped has done some act or made some representation to the party alleging the estoppel which led the latter to believe and act on the belief in the existence of certain facts, under circumstances making it contrary to justice and good faith to permit the party who did the act or made the representations to controvert afterwards their truth. In this case the defendant insurance company has done no act and made no representations which misled MacKelvie in any particular. It did not lead him to believe, and act on the belief, that it intended the policy to be in force, notwithstanding the explicit provision in the policy that it was not to take effect until the first premium was actually paid, and an equally explicit provision that its agents were not authorized to make, alter, or discharge contracts, and the explicit notice in the premium receipt that agents are forbidden to receive for cash due anything but cash, or to make, alter, or discharge contracts, effectually prevented the fact that the receipt reached the hands of the deceased from estopping the company. Moreover, the delivery of the policy is shown by the evidence to have been conditional only, and was written in a form which put MacKelvie on notice of that fact, and, as the receipt accompanied the policy into the hands of the deceased, the facts which negatived unconditional delivery of the policy also negatived unconditional delivery of the receipt.

[7] It is said that the court erred in directing a verdict and in denying the plaintiff's motion to go to the jury upon certain alleged issues of fact. But there were no facts in dispute upon any of the points upon which the case turns. The question is one of law, pure and simple. There was no evidence to go to the jury that the premium had been paid. There was no evidence to show any communication between the defendant and the insured which would lay a basis for a waiver of the condition in the policy that it should not take effect unless the first premium should actually be paid during the lifetime of the deceased. Whatever contention there is as to a waiver rests upon acts of agents, and as matter of law the agents had no authority to waive anything. There is no disputed evidence as to whether the policy or the receipt was delivered.

But the plaintiff relies particularly upon one issue of fact which it urges ought to have been submitted to the jury. That is the question of the acceptance or rejection of the policy by Mr. MacKelvie. We are told the trial court construed certain correspondence which passed between MacKelvie and the agent, Albright, on August 10th and 13th, and that upon that construction determined that MacKelvie had brought about a situation which failed to create a binding contract of insurance. Inasmuch as the first premium was never paid, and payment was never waived by defendant as a matter of law, there could be no valid policy of insurance, and therefore no reason for allowing the jury to consider whether MacKelvie accepted or rejected the policy.

The plaintiff, however, relies upon Smith v. Provident Savings Life Assurance Society, 65 Fed. 765, 13 C. C. A. 284, insisting that it deals "with an almost precisely similar situation" to the one existing

in the instant case, and that it is controlling, unless we shall determine not to follow our "sister tribunal." The policy in that case provided, as the one in this case did, that it should not go into effect until the first premium had been actually paid during the lifetime of the insured. The policy was, as here, delivered by the agent before the premium was paid and the insured died before making payment. The policy also stated, as the one in this case did, that no agent "is or will be authorized to make, alter, or discharge this contract, or to waive any forfeiture thereof." In that case, as in this, the policy was delivered by the agent to the insured, who took it, but died before paying the first premium. The deceased's wife sued upon the policy, and at the close of the case the trial judge directed the jury to bring in a verdict for the defendant. The sole issue in the lower court was whether the policy took effect as a contract; and the answer to it, the Court of Appeals said, depended on two questions:

"First. Had Spink, as general agent of the defendant company, authority to bind it by delivering the policy and receipt to the applicant without receiving the premium in cash? Second. Did Spink and Smith intend a binding delivery and receipt of the policy? If, in every reasonable view of the evidence, either question must be answered in the negative, the action of the court below was right; but if, in any reasonable view of the evidence, both may be answered in the affirmative, then the judgment of the Circuit Court must be reversed."

The Court of Appeals decided that the court below should have submitted to the jury the issue whether Spink, the agent, had actual authority to deliver binding policies without actually receiving the premiums. The Smith Case is, however, very clearly distinguishable from the case at bar. That case belongs to the particular class of cases in which the courts have held that without payment a policy is binding which declares upon its face that it is not to be binding until the first premium has been paid. The cases which so hold are those in which the company has been held to have waived cash payments by its method of business, as where a company instructs its agents that it will hold them personally responsible for unpaid premiums on the policies which they deliver. See Miller v. Life Insurance Co., 12 Wall. 285, 20 L. Ed. 398, and Pennsylvania Casualty Co. v. Bacon, 133 Fed. 907, 909, 67 C. C. A. 497. But in the instant case, as we have before remarked, there is no evidence whatever that the defendant was ever accustomd to waive, or did waive at any time, the payment of premiums in advance or authorized its agents "to make, alter, or discharge" its contracts. For that reason Smith v. Provident Savings Life Assurance Society does not support the plaintiff's case.

The various other assignments of error need not be reviewed in detail. We have not overlooked them, but we do not find in any one of them any reason for reversing the judgment.

Judgment affirmed.