## SUPREME LODGE, K. P., v. WOOD.

(Court of Appeals of District of Columbia. Submitted November 2, 1922. Decided February 5, 1923.)

No. 3828.

1. **Appeal and error ⬅183—Right to recover on common counts not considered, if not raised below.**

The objection that there could be no recovery on the common counts because the contract of insurance between the parties had been in part performed will not be considered on appeal, where it was not raised or decided below.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Insurance ⬥⟿754—Insured presumed to know contents of policy, in absence of fraud or mistake.**

Where there was no fraud or mistake of fact attending the issuance of the policy, the insured was presumed to know its contents, and there is no liability thereon after the policy had lapsed in accordance with its terms, notwithstanding misstatements by the agent as to the provisions contained in the policy, and especially where the evidence showed that the beneficiary had read the policy, and that insured, when informed it had lapsed, wrote a letter indicating he knew its contents and made application for reinstatement.

**3. Evidence ⬥⟿441(13)—Representations and agreements prior to issuance of policy are merged therein.**

Representations and agreements made prior to the issuance of the contract of insurance are merged therein, and parol evidence will not be received to modify or change the terms of the policy, in the absence of fraud or mistake of fact.

Appeal from the Supreme Court of the District of Columbia.

Action by Catherine Wood against the Supreme Lodge, Knights of Pythias, a corporation. Judgment for plaintiff, and defendant appeals. Reversed and remanded, with direction to grant a new trial.

Thomas P. Littlepage and Sidney F. Taliaferro, both of Washington, D. C., for appellant.

W. Gwynn Gardiner, of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and BARBER, Judge of the United States Court of Customs Appeals.

BARBER, Acting Associate Justice. This is an appeal from a final judgment entered on the verdict of the jury after remittitur had been filed. The material facts are as follows:

The appellant, the Supreme Lodge, Knights of Pythias, is an incorporated fraternal organization having an insurance department. It may be hereafter referred to as the company. Members of subordinate lodges are eligible to insurance therein, and those obtaining it are grouped in sections, each of which has a secretary, whose duties are, among other things, to collect and forward the monthly premiums or assessments; but they have no authority to make or issue policies, such authority appertaining to the home office of the company only.

The appellee, the plaintiff below, is the widow of William E. Wood, of Washington. He was a member of a subordinate lodge in this city, and obtained a policy of insurance in the company in 1885 for $2,000 in what was known as class 4; the appellee being the beneficiary named therein. He carried this policy until 1909. In the interim he became so ill that the negotiations, hereinafter referred to, were some of them attended to for him by his wife or daughter.

Late in 1908 the assessments on this policy had so increased that Mrs. Wood, who had been the person through whom payments had been made, told one Kline, who was then a lodge member and the secretary of the local section here, that she would have to drop it; that she could not keep it going. He advised her not to give it up; told her that the policy could be transferred to class 5, which provided for

a flat monthly rate, and was supposed in other respects to be more advantageous to the insured.

In this connection Kline represented in writing to Wood or his wife that after three years, if the transfer were made, the company would carry the new insurance for 1 year 360 days, after 4 years for 2 years and 185 days, and after 5 years for 2 years 340 days, meaning thereby that, after the monthly payments provided in the contemplated new policy, of $13.90, had been paid for 36 consecutive months the company would carry the policy for 1 year without cost; that is, give the insured what was called a "financial rest" for one year, at the expiration of which time the monthly payments could be resumed. Relying upon this, Wood made formal application for and received at about its date a new policy in the company in class 5, for the sum of $2,000, dated February 1, 1909, of which his wife was the beneficiary. His application therefor was dated December 31, 1908, and a copy thereof attached to the policy when he received it. The old policy was concurrently surrendered. Whether or not Wood read the new policy when he received it does not appear, but his wife glanced it over casually. She read the second page, particularly that part which was headed "Paid-Up and Extended Insurance," but did not know what the term meant.

The premiums on the new policy were paid for 36 months, at which time Wood, or his wife, advised Kline that they desired to accept the financial rest of 360 days. He told them to apply to the company, which they did by letter, to which no reply was received, but Kline told Mrs. Wood the company had acceded to her request. Accordingly no premiums were paid for one year, but on February 1, 1913, the appellee, on behalf of her husband, went to Kline's house and offered to pay the $13.90, which was refused, and then or soon thereafter Kline informed her that the company claimed the policy had lapsed by reason of the nonpayment of premiums for the year. Various interviews and some correspondence between Wood, or his wife, and Kline about the matter ensued; Kline frequently assuring them that he did not understand why the company insisted that the policy had lapsed, and that he would do all he could to get it reinstated. As a result, Wood made application for reinstatement, pursuant to the terms of the policy, and after taking the necessary examination therefor he was notified that the policy would be reinstated, provided he paid $244, with 5 per cent. interest thereon. No part of this amount was paid, the policy was not reinstated, and in October, 1914, Wood died with the policy in his possession.

While the negotiations for reinstatement were pending, Wood, at the suggestion of Kline, signed and caused to be delivered to him the following letter, which Kline was to use in trying to get the company to do something for them, but what, if any, use he made of it does not appear.

"August 26, 1913.

"John M. Kline, etc.—Dear Brother: I am so financially embarrassed I am unable to pay the back premiums and interest, amounting to $245.90, on my policy, and still continue the premiums. Please see that my policy is

kept in force until January, 1914, at which date the extended insurance on my policy will expire, and therefore my policy lapse.

"Fraternally yours,"

None of the correspondence between Kline and Wood, or his wife, appears to have been forwarded to the home office of the company, and it had no actual knowledge of any of the negotiations between Kline and the insured, or the representations made by Kline before the policy was issued, or of any misunderstanding about the matter, until the suit was brought. No claim was made at the trial of the case that the company had been guilty of fraud or misrepresentation in the surrender of the old and the issuing of the new policy, but it was claimed that the secretary had misinformed the insured as to the effect of the new policy to be issued to him.

The second policy, which was issued from the home office, in paragraph 3 provided that no officer or representative of the company, or of any subordinate body, had any right or power, by any statement, agreement, promise, or manner of transacting business, to waive the provisions or requirements of the contract between the members and the society, and paragraph 5, that it was issued and accepted subject to the provisions and conditions thereinafter contained. Among the conditions were the following:

That "the monthly payments will be due and payable to the secretary of the section to which the member belongs without notice in advance on the first day of each and every month. Failure to make any such payment on or before the 20th day of the month for which the same is due shall ipso facto from and after such date forfeit the certificate, subject to the provisions contained in paragraph 7."

Paragraph 7 provided that, after 36 consecutive monthly payments had been made, the insured would be entitled either to a paid-up or to an extended insurance policy, and that if a member holding a lapsed policy made no selection between the two options within 30 days from its lapse it should be understood that the policy was extended as under the paragraph provided.

There was a provision for reinstatement of a lapsed policy, and also a tabulated statement as to the paid-up and extended values of policies after the 36 monthly premiums had been paid, and it is significant to notice that the length of time therein provided for which the policy would be extended corresponds identically with the length of time which Kline in writing had represented to the insured was the duration of the financial rest, which would be allowed under the policy. This fact suggests the comment that Kline misunderstood the effect of this provision, which accords with both his own testimony and that of Mrs. Wood. The policy does not provide for any such cessation of payments, with subsequent right of resuming the same, as Kline had represented to Wood.

The declaration was in two counts; the first claiming damages for a breach by way of nonpayment of the $2,000 provided in the second policy. The second was in general assumpsit.

The court directed a verdict for the appellant on the first count, submitted to the jury the right of recovery on the second, and instructed them, as set forth in appellee's prayer, that if they found Wood—

"upon certain representations and statements of the local secretary of the defendant company, gave up the policy which he had in said company for $2,000, and accepted another policy for a like amount, and you further find from the evidence that the representations or statements made by the said agent were made under a misunderstanding as to what the new contract with the insured was, then you are instructed that, when the defendant company had notice that the insured gave up his policy upon the said representations of the agent, through a misunderstanding of what the new policy contained, it was their duty then and there to reinstate and deliver back to the insured the original policy of insurance, or to pay the insured the amount of premiums paid on the two policies up to that date, and interest thereon at 6 per cent. per annum; and if you find that they did not offer to do either, but insisted upon the forfeiture under the terms of the policy, the plaintiff is entitled to recover in this case the total amount of premiums paid on both policies, with interest on each payment from the date of said payments to date of this judgment."

Further instructions were given to the effect that, if insured did not get the kind of policy in exchange that he expected, and Kline had represented to him it would be, that the appellee was entitled to recover. The verdict was for an amount in accordance with appellee's request, which was reduced, by remittitur filed after motion for new trial, to the amount of the premiums, with interest, less the cost of carrying the insurance.

[1] In this court appellant claims that in no event could recovery be had under the common counts, because the contract had been in part performed. This question was not raised or decided below, and is not for that reason considered here. Aside from a short discussion of this point, the brief of appellee is limited to the consideration of the measure of damages. A copy of the application was made part thereof, and so the policy was not affected by the rule of Brotherhood of Railroad Trainmen v. Groves, 48 App. D. C. 151.

[2] There was no fraud or mistake of fact attending the issue of the policy, and the insured was therefore presumed to know its contents. Union Central Life Insurance Co. v. Hook, 62 Ohio St. 256, 56 N. E. 906; Bostwick v. Mutual Life Insurance Co., 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, 67 L. R. A. 705; Floars v. Ætna Life Insurance Co., 144 N. C. 232, 56 S. E. 915; Insurance Co. v. Lewis, 4 App. D. C. 68. And the record shows that Wood's wife, who participated in the negotiations for the new policy, soon after its receipt, casually read it over; that when informed it had lapsed he made application for its reinstatement; that he wrote the letter of August, 1913, to Kline, which clearly implies that he knew what it contained, and he never demanded that it be reformed. The appellee should not now be heard to claim that the insured did not accept the new policy and become bound thereby.

[3] There is another principle, invoked by the appellant, that seems to conclude the right of recovery. It is settled law that all the representations and agreements made prior to the issuing of a contract are merged therein, that the contract speaks for itself, and that parol evidence will not be received to modify or change the same, in the absence of fraud or mistake of fact. Insurance Co. v. Mowry, 96 U. S. 544, 24 L. Ed. 674; Northern Assur. Co. v. Grandview Building Association, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213; Pennman

v. St. Paul Insurance Co., 216 U. S. 311, 30 Sup. Ct. 312, 54 L. Ed. 493; Prudential Insurance Co. v. Moore, 231 U. S. 560, 34 Sup. Ct. 191, 58 L. Ed. 367; Lumber Underwriters v. Rife, 237 U. S. 605, 35 Sup. Ct. 717, 59 L. Ed. 1140; Cornelius v. Farmers' Insurance Co., 113 Iowa, 184, 84 N. W. 1037; Union Central Life Insurance Co. v. Hook, 62 Ohio St. 256, 56 N. E. 906; Modern Woodmen of America v. Tevis, 117 Fed. 369, 54 C. C. A. 293.

In the case of Insurance Co. v. Mowry, 96 U. S., supra, which was an action upon an insurance policy, in which it was claimed that before the policy was issued the company's agent had agreed that the insured should enjoy certain privileges, which were contrary to and not contained in the policy that was afterwards delivered, the court discussed the question of the admission of parol evidence to vary the terms of a written contract subsequently executed, and also the question of estoppel in such cases. It held that it must be conclusively presumed that all previous verbal arrangements were merged in the written agreement; that if by inadvertence or mistake any were omitted the parties were relegated to equity for their relief; that estoppel could not arise from a promise as to a future action with respect to a right to be acquired upon an agreement not yet made.

In the subsequent cases in that court, above cited, the same views have been repeatedly affirmed. In the case before us the representations as to what the new policy would contain, so far as they differ from what in fact it did contain, can at law afford the appellee no relief. The new policy constitutes the contract between the parties, and the beneficiary has no rights, except such as arise thereunder. That contract, by its terms, has lapsed. It has not been reinstated. There was nothing to submit to the jury, and the court should have directed a verdict for the appellant here on both counts.

The judgment below is reversed, with costs, and remanded, with direction to grant a new trial.