## CURTIS v. PRUDENTIAL INS. CO. OF AMERICA.

### No. 3197.

Circuit Court of Appeals, Fourth Circuit.

Jan. 12, 1932.

Joe W. Ervin, of Charlotte, N. C. (John M. Robinson and Guy T. Carswell, both of Charlotte, N. C., on the brief), for appellant.

C. W. Tillett, Jr., of Charlotte, N. C., and James H. Pou, of Raleigh, N. C. (Ralph W. Hyatt, of Newark, N. J., Pou & Pou, of Raleigh, N. C., and Tillett, Tillett & Kennedy, of Charlotte, N. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This action at law was instituted in the superior court of Mecklenburg county, N. C., by Mrs. Charles H. Curtis, appellant, seeking to recover on a policy of insurance alleged to have been issued by appellee, the Prudential Insurance Company of America, defendant below, on the life of complainant's husband, Charles H. Curtis, in the sum of $5,000. The plaintiff was named as beneficiary in the policy.

On petition of appellee, the cause was removed to the District Court of the United States for the Western District of North Carolina. In the court below, at the conclusion of the plaintiff's evidence, the attorneys for the defendant demurred to the evidence, which motion the court below sustained, and entered a judgment of nonsuit. From this judgment, the plaintiff brought this appeal.

Under date of October 5, 1928, the plaintiff's husband, Charles H. Curtis, applied, in writing, for a $5,000 life insurance policy with double indemnity in the event of accidental death; C. F. Hancock being the soliciting agent. Upon this application, the company wrote out a policy, dated October 13, 1928, which was transmitted to soliciting agent Hancock. The premium was payable quarterly, and amounted to $17.55 per quarter. Curtis paid $2.50 on account when he signed the application, and between that time and his death, which occurred January 15, 1929, there were paid to Hancock in several payments sums aggregating $7, so that when Curtis died only $9.50 of the first premium had been paid, and the policy had never been delivered.

The application was signed by the insured, and contained the following clause: "I further agree that the policy herein applied for shall be accepted subject to the privileges and provisions therein contained and that Unless the full first premium is paid by me at the time of making this application, the policy shall not take effect until issued by the company and received by me and the full first premium thereon is paid, while my health, habits and occupation are the same as described in this application."

Under the language of the policy, the application was made a part of the contract, and the policy also contained a clause to the effect that the policy, together with the application, constituted the entire contract between the parties. At the time of the application for the policy, the Curtis family was carrying industrial insurance with the defendant company on two young children and the life of the plaintiff, for which policies the local agent, Hancock, was collecting weekly payments.

Agent Hancock agreed that the premium on the policy in suit could be paid weekly, and plaintiff began making weekly payments of $1.25 per week upon the policy. Agent Hancock raised the weekly rate of payment $1 per week shortly after the payments were begun, and plaintiff testified that, because of that fact, she ceased making the payments from some time in November until January 7, when an additional $2 was paid, making a total paid on the policy of $9.50. In the meantime, during the Christmas week, the agent called on insured and explained why it was necessary to raise the weekly payment, and the insured agreed to continue paying.

On the Thursday before January 14, 1929, the plaintiff received from the defendant company a notice and demand for payment of the second quarter premium due January 13, 1929. Agent Hancock called at the Curtis home on January 14, and plaintiff testified that she offered to pay him the balance due on the first quarter, but that the agent told plaintiff that her husband's policy was in force and that there was no use to worry about it, and that it would be in force another month under the payments already made.

On January 15, 1929, the insured was killed.

At the trial, the policy in question was produced by the defendant pursuant to a notice served on it by the plaintiff, and was introduced in evidence by the plaintiff. The word "Canceled" in perforations was stamped over the signatures of the president and secretary of the company on the policy. The contention of the defendant below, which was sustained by the action of the trial judge, is that there never was any contract of insurance; first, because the policy was never delivered, and second, because the first premium was never paid.

The plaintiff contends that the policy was in full force and effect at the time of insured's death; there having been a constructive delivery of the policy or a waiver of delivery, and the first premium having been paid or waived.

■ The validity of the provisions in the application and the policy is unquestioned. Similar provisions have been passed upon by the courts, and, so far as we can find, have been uniformly approved.

In MacKelvie v. Mutual Ben. Life Ins. Co. (C. C. A.) 287 F. 660, 663, it is held: "The law is settled in this court that, when a life insurance policy contains, as this one did, the provision that it 'will not take effect, unless the first premium or agreed installment thereof shall be actually paid during the lifetime of the insured,' the provision means exactly what it says and will be enforced. And if the policy contains, as this one did, the express provision that 'agents are not authorized to make, alter or discharge contracts,' the waiver relied on must be one by the company itself, and no attempted waiver by an agent will be treated as its equivalent. In Pennsylvania Casualty Co. v. Bacon, 133 F. 907, 67 C. C. A. 497, a policy of insurance stated that it was not to take effect 'unless the premium is actually paid previous to any accident upon which claim is made,' and it provided that no waiver should be binding on the insurer unless indorsed on the policy and signed by the president or secretary of the company. This court held that a subagent had no authority to accept a note in lieu of cash for the first premium, and to thereby waive the provisions of the policy. The decisions of the Supreme Court in Northern Assurance Co. v. Grand View Building Association, 183 U. S. 318, 22 S. Ct. 133, 46 L. Ed. 213; Penman v. St. Paul Fire & Marine Ins. Co., 216 U. S. 311, 30 S. Ct. 312, 54 L. Ed. 493; Ætna Life Insurance Co. v. Moore, 231 U. S. 543, 34 S. Ct. 186, 58 L. Ed. 356; Lumber Underwriters v. Rife, 237 U. S. 605, 35 S. Ct. 717, 59 L. Ed. 1140; Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202—support the same doctrine. The provisions that a policy of life insurance shall not take effect unless the first premium is actually paid in cash during the lifetime of the person insured is valid and will be enforced according to its terms." See, also, Sturgill v. New York Life Ins. Co., 195 N. C. 34, 36, 141 S. E. 280.

We believe this to be a wholesome rule, because it is clearly apparent that the business of life insurance, which is so important a part of our civilization in this latter-day world, could not be carried on were the insurance companies bound by every act or statement of a local agent; especially one whose duty is mainly that of soliciting or collecting. If it were otherwise, great injustice would follow, and a great loss be imposed upon holders of life insurance policies, because of the increased burden upon the companies that would result. While the courts are careful, in every way, to protect the interest of beneficiaries under insurance policies, yet there is a limit which should not be exceeded. The reasonableness of the respective contentions should be the yardstick with which to measure the justice of the matter.

■ The notice in question contained the following provision: "Notice to Policyholders as to Powers of Agents.—No Agent has power on behalf of the Company to make or modify any contract of insurance or waive any provision thereof, to extend the time for paying a premium, to waive any forfeiture, or to bind the company by making any promise, or making or receiving any representation or information."

This provision, coupled with the previous statement in the application, with which the insured must be presumed to be familiar, leads us to the conclusion that there never was in this case any valid contract of insurance that would bind the defendant company.

The first payment was never made, nor was the local agent authorized to deliver the policy until such payment had been made, and there is no contention that the policy was ever actually delivered.

■ While we recognize the force of the contention made on behalf of the plaintiff that forfeitures are not favored at law, yet where there has been no contract there can be no

forfeiture of a contract, and we think this is a case of no contract. None of the conditions precedent especially stipulated as necessary before the contract became binding was ever properly waived by any one having authority. Slocum v. New York Life Ins. Co., 228 U. S. 364, 33 S. Ct. 523, 57 L. Ed. 879; New York Life Ins. Co. v. Fletcher, 117 U. S. 519, 6 S. Ct. 837, 29 L. Ed. 934; Hoffman v. John Hancock Mutual Life Ins. Co., 92 U. S. 161, 23 L. Ed. 539; Philadelphia Life Ins. Co. v. Hayworth (C. C. A.) 296 F. 339; Ætna Life Ins. Co. v. Johnson (C. C. A.) 13 F.(2d) 824; Dodd v. Ætna Life Ins. Co. (C. C. A.) 35 F.(2d) 673; Bradley v. New York Life Ins. Co. (C. C. A.) 275 F. 657.

■ This seems to be the rule supported by the great weight of authorities in the federal courts, and the questions here involved, being questions of general jurisprudence, are to be determined by the federal rule. Ætna Life Ins. Co. v. Moore, 231 U. S. 543, 34 S. Ct. 186, 58 L. Ed. 356; MacKelvie v. Mutual Ben. Life Ins. Co. (C. C. A.) 287 F. 660, 663; Pilot L. Ins. Co. v. Owen (C. C. A.) 31 F.(2d) 862.

However, the North Carolina rule seems to be the same as the federal rule on this point. Thompson v. Equitable Life Assurance Society, 199 N. C. 59, 154 S. E. 21; Sturgill v. New York Life Ins. Co., 195 N. C. 34, 141 S. E. 280; Turlington v. Metropolitan Life Ins. Co., 193 N. C. 481, 137 S. E. 422; Perry v. Security Life & Annuity Co., 150 N. C. 143, 63 S. E. 679; Ormond v. Mutual Life Association, 96 N. C. 158, 1 S. E. 796; Whitley v. Peidmont & Arlington Life Ins. Co., 71 N. C. 480; Clifton v. Mutual Life Ins. Co., 168 N. C. 499, 84 S. E. 817.

We have examined the authorities cited on behalf of plaintiff, but find them distinguishable, in that they deal with questions of waiver after the contract had admittedly become effective.

■ The contention that the notice given of the payment due for the second quarter was a waiver of all conditions that existed, with reference to the first payment, is, we think, without merit. A notice of the second quarter's payment was issued from the home office of the company, and was a mere matter of routine carried out in compliance with the North Carolina law requiring notices to be sent out at a certain stated time before the due date. Certainly the purely mechanical act of sending out a notice by one department of a large insurance company having that duty to perform with respect to thousands of policies could not be considered to constitute a waiver of the two conditions that were here necessary to be performed before any contract existed; that is, payment of the first premium and the delivery of the policy. Under some circumstances, such a notice might be held to prevent the forfeiture of a contract already in effect, but certainly cannot be held to give life to a contract that never existed.

There is no evidence whatever that the officials of the company had any notice that the local agent was collecting weekly installments from the insured, or that the agent remitted same or any part thereof to the company. Had there been any such evidence, and had the company had notice of the situation as it actually was, an entirely different case would be presented for our consideration.

For the reasons above given, the judgment of the court below is accordingly affirmed.