### YANCY T. ORMOND v. THE FIDELITY LIFE ASSOCIATION OF PHILADELPHIA.

*Life Insurance—Payment of Premium—Agent.*

1. Where an application for a life insurance policy declares on its face, that payment of the premium is a condition precedent to the issuing of the policy, the policy is not in force until the premium is actually paid.

2. Any change in the health of the insured between the application for life insurance and the issuing of the policy, should be communicated to the insurer.

3. Where prepayment of the premium is made an essential part of the agreement, no agent can dispense with its requirement.

4. So, where the insured made application for insurance, and the application set out that the policy would not take effect until the premium was paid, but the agent of the insurer told the applicant that he could pay the premium either at that time, or when the policy was delivered, and the applicant elected to pay at the latter time, but died before the policy was received; *It was held*, that the policy never took effect and the insurer was not liable.

(*Whitley* v. *Ins. Co.*, 71 N. C., 480; cited and approved).

CIVIL ACTION, tried before *Shepherd, Judge*, at Fall Term, 1886, of GREENE Superior Court.

The parties to this action agree upon the following as the facts material to the decision of the question of law involved

in the action, and consent that judgment may be rendered thereon as on a special verdict.

The plaintiff and Margaret A. Ormond, on the 13th of November, 1884, made application for a policy of insurance in the defendant's company upon the life of Margaret A. Ormond for the benefit of the plaintiff. That said application was taken by one Thomas McGee, an agent of the defendant, and when the application was taken, the plaintiff asked said agent when he would have to pay membership fee and first year's dues, and the agent replied that it was customary to pay when the application was made, but some paid when the policy was delivered, and the plaintiff said he would pay when the policy was delivered. The agent, McGee, knew that the plaintiff was a man of high financial and social standing, and was satisfied that payment would be made when called for.

The agent, McGee, took the application to the general agents of the defendant, Midgett & McCullen, to whom the standing of the plaintiff was well known, and informed them of the circumstance attending the making of the application; said general agents forwarded it to the home office in Philadelphia; and on the 19th day of November, 1884, it issued the policy and forwarded the same to the general agents. who, on the 24th of November, forwarded the same by mail to the plaintiff at Hookerton. without condition or explanation, or saying anything about the payment of the membership fee and first year's dues, inclosing therewith a receipt.

On the afternoon of the 16th day of November, 1884, said Margaret A. Ormond was taken sick, and a medical attendant was called to her on the 19th, and on the 21st it was discovered that she had pneumonia, from which she died on the 23d, having been confined to her bed from her first sickness on the 16th; that her sickness was not of such a nature as to cause any apprehension in her own mind or the minds of the members of the family, until the 19th.

By the only mail route from the postoffice of plaintiff and said Margaret A. Ormond, a letter mailed at said postoffice on the 16th, 17th or 18th of November, would have reached Philadelphia on the 19th, or Kinston, where the general agents reside, on the 20th.   One mailed on the 19th or 20th would have reached Philadelphia on the 21st, or Kinston on the 22d; one mailed on the 20th or 21st, would have reached Philadelphia on the 25th, there being a tri-weekly mail from her postoffice to Goldsboro, N. C., on Tuesday, Thursday and Saturday.   No notice was given the defendants of the sickness of Margaret A. Ormond until the 27th of November. The plaintiff having received the policy on the 25th day of November through the mail as stated, took the same on the 27th to the general agents, informed them of the sickness and death and the circumstances attending it, and asked them if the policy was all right; and they informed him that it was, and he paid them the membership fee and first year's dues, and they countersigned the receipt for the fee and dues, and at the suggestion of said agents, sent forward notice of death.   Afterwards during the same day, one of the agents saw the plaintiff, and told him he was not sure that the policy was good.   On the 8th of December, 1884, in consequence of a notice from the general agents, the plaintiff went to their office, and they informed him that they had been notified by the defendants to return to him the money, stating at the same time that they did not think it was necessary, but the plaintiff could take the money, and if his claim was established he could return the money.   Upon this assurance, without intending to waive any right, he took the money.

The general agents, Midgett & McCullen, were managers for the States of North Carolina and South Carolina, and had authority to solicit and forward applications for insurance, receive and receipt for membership fees and first annual dues, by countersigning receipts signed by the presi-

dent and treasurer, to deliver policies, and appoint sub-agents.

This agreement of facts is made, reserving the question for the consideration of the Court, as to whether any parol evidence is admissible to contradict the statement in the policy that the membership fee and first year's dues were paid, as contended by plaintiff's counsel.

His Honor held that plaintiff was not entitled to recover, and that defendant go without delay and recover his costs. From which ruling and judgment the plaintiff appealed.

*Messrs. W. C. Monroe* and *J. W. Bryan*, for the plaintiff.
*Messrs. J. Q. Jackson* and *W. S. Campbell*, for the defendant.

SMITH, C. J., (after stating the facts). Among the clauses found in the application, made with the by-laws and by express words in the policy, a part of it, is the following:

"3. That under no circumstances shall the policy hereby applied for be in force, until the actual payment to, and acceptance of the annual dues by the Association or its authorized agent, during the life-time and good health of the party who is proposed for membership and insurance."

The policy itself contains a recital clause, declaring, " and whereas the first payment of such annual dues having first been received by the treasurer or an accredited agent of the Association," &c. Accompanying the policy and attached to it, is the form of a receipt used by the company in these words:

" *The Fidelity Mutual Life Association of Philadelphia, Pa.*
PHILADELPHIA, Pa., Nov. 19, 1884.
Office, 908 Chestnut St.

Received from the owner of Policy No. 6934, in the life-

time, fifteen dollars, for the annual dues, due the 19th day of November, 1884.

For terms of mutual agreement, see application and policy. } ARTHUR THATCHER, *Treas'r.* D. G. HOUSE, *President."*

At the foot of the receipt, and in the left corner, is the following:

*" Notice to Policy Holders:*

This receipt to be valid, must be signed by the president or treasurer of the Association, and in exchange therefor, cash or its equivalent be given by the holder of the policy at the date hereof, or within three days allowed by the Association. And when payment hereon is made to an authorized agent, such agent must countersign at the date of paying, as an evidence of payment to him."

Beneath the acknowledgment is this: "Countersigned at ............, ........ , agent," but without any signature of the agent.

The policy thus with the attached receipt, plainly declares that the required precedent payment has not been made, and must be paid to the agent before the contract of insurance becomes complete and operative on the Association, and the policy becomes effectual.

Indeed, the recital seems to contemplate the payment as an essential condition of a valid delivery by the agents, to whom the policy was sent. Moreover, this must be "during the *life-time and good health"* of the party to be insured.

The policy, incorporating with it the other papers by reference, if it be deemed effectual from its date, and the delivery of it in the manner stated effectual, constitutes the contract between the parties, by which their respective rights and obligations are to be ascertained, and the dues were not paid until four days after the death of the insured. This

certainly was not a compliance with the fundamental conditions on which its validity was dependent.

The plaintiff insists, that the initiatory payment was dispensed with and waived by the soliciting agent at the time of taking the application, and if not then, by the unqualified transmission to him by the general agent of the policy received by them.

The facts do not warrant this contention. The plaintiff, in answer to his inquiry of the agent, McGee, when he would be required to pay, was informed that payments were sometimes made at the taking of the application, and sometimes when the policy was delivered, and in exercising his discretion, the plaintiff said he would pay at the later period. There was no waiver in the case, and the plaintiff, under the agent's advice, was but availing himself of an allowed option —a conceded right. There was no waiver by the general agents, nor had they authority to dispense with the prepayment, if indeed an inference of an intent to do so can be drawn from their act of forwarding the policy without countersigning the receipt. The actual receipt of the dues was indispensable to the efficiency of the insuring contract, and this being a provision in the application, is brought to the knowledge of the plaintiff and forms part of his contract. In *Whitley* v. *Life Ins. Co.*, 71 N. C., 480; it is declared, that a policy of life insurance is not binding until the premium is paid, a clause requiring prepayment being contained in the application; and further that any material change in the condition of the health of the insured, intermediate and before the consummation of the contract by payment of the premium, should be communicated to the company.

The clause under which the policy, and of course the contract consummated by its issue, became inoperative, is an underlying and essential part of the agreement, and no agent can dispense with its requirement. The policy, as we interpret its recital, makes this a prerequisite to its taking effect

by delivery, as does the form of acknowledging payment. The plaintiff therefore, knows that *actual payment* must be made, and that "*under no circumstances*" can the policy be in force without it is made.

We do not propose to enter upon other inquiries discussed with great learning, and after much research, on either side, such as the omission to give information of the sickness of the insured, and the explanation offered for the failure, and the period at which the contract became effective; and will only say, that as there are conditions in the policy not contained in the application, which constitute, after acceptance, part of the policy, it would seem that the plaintiff being at liberty to decline the added conditions, his assent to them would be necessary to a completed agreement. Without passing upon other matters, we put our decision, in accordance with numerous rulings in adjudged cases, upon the ground that the clause in the policy referred to, constitutes a condition precedent, and the waiver relied on does not dispense with it.

There is no error, and the judgment is affirmed.

No error.                                         Affirmed.