The plaintiff, W. P. Hardy, sues on three policies of insurance, which he alleges were issued by the defendant on 19 October, 1904, on the life of Parrott M. Hardy. He claims that he had an insurable interest in the life of the insured, and also as assignee of the policies.
The defendant resisted recovery upon the grounds:
1. That the plaintiff had no insurable interest in the life of the insured, and therefore could not apply for a policy of insurance on his life.
2. That he could not take as assignee, because the policy was not delivered to the insured, insisting that in the absence of stipulations in the policy, there was no evidence of delivery, and further, that the plaintiff admitted that he paid the first premium and that the policies were then delivered to him, and that the policy provided that it should not be in force until the first premium was paid. *Page 342 
3. That the whole evidence proved a wagering contract of insurance forbidden by law.
On 24 September, 1904, Parrott M. Hardy made application for the three policies sued on, payable to his estate. The policies are dated 19 October, and are payable to the estate of said Hardy in accordance with the application.
On 31 October, 1904, two of said policies were assigned to the plaintiff, W. P. Hardy, and on 31 December, 1904, the third policy was assigned to him, the form of assignment in each case being as follows:
For value received, I hereby transfer, assign, and turn over unto William P. Hardy all my right, title, and interest in policy No. __________, issued by the AEtna Life Insurance Company of Hartford, Conn., (433) on the life of Parrott M. Hardy, and all benefit and advantage to be derived therefrom.
Witness my hand and seal at Institute, State of North Carolina, this ___________________, 1904. PARROTT M. HARDY, [L. S.]
Witness: THOMAS McGEE.
The agent of the defendant testified in regard to the applications and policies: "I solicited the application for life insurance and he agreed to the insurance for the benefit of his children, and each child was to pay his part. The policies were procured as applied for. When they were to be delivered, Mr. Parrott M. Hardy told me that one or more of the children was unable to take the insurance, and suggested that his nephew, W. P. Hardy, take the insurance that his son was unable to take; and I told him that it would be all right, but that he did not have an insurable interest, but that I could have the policy assigned to him. I filled a blank requesting the company to assign the policy to W. P. Hardy. . . . . He told me that W. P. Hardy was as near to him as his own child; that he often did him great favors. He expressed the desire that the insurance be for the benefit of W. P. Hardy, and I suggested that it be assigned to him. I then produced the blank for assigning the policies to W. P. Hardy, which he, Parrott M. Hardy, signed, requesting that the company make the policy or policies payable to W. P. Hardy. . . . I do not remember whether Mr. W. P. Hardy knew about the assignment of policy to his benefit until I took the policy to him. My mind is not clear on that. My recollection is that he knew nothing about the transaction until I went to deliver him the policy after the assignment. My recollection is that I had no talk with Mr. W. P. Hardy until after policy had been assigned. These transactions were with Mr. Parrott M. Hardy."
It was provided in each policy that: "This policy shall not take *Page 343 
effect until the first premium hereon shall have been actually paid during the lifetime and good health of the insured and within sixty days from the date hereof, a receipt for which payment shall be the delivery of this policy." (434)
All the premiums were paid by the plaintiff, and the first was not actually paid before the assignments to the plaintiff. There was evidence tending to prove that the local agent of the defendant knew that the plaintiff did not have an insurable interest in the life of the insured, and that it was the purpose of the insured to have the policies assigned to the plaintiff, and for the plaintiff to pay the premiums, and that the local agent informed the State agent of the defendant of these facts, who, in turn, gave the home office the same information.
It was also in evidence that after obtaining this information, the defendant forwarded the policies and the forms for the assignments to its local agent, in order that the policies might be delivered, and that prior to the receipt of the policies and assignment by the said agent, the plaintiff knew nothing of the transaction. The plaintiff was a nephew of the insured, and evidence was introduced tending to show that the relationship between them was affectionate and that the insured regarded the plaintiff as he did his own children.
The issues submitted to the jury and the answers thereto are as follows:
1. Were the alleged assignments of the three policies of insurance sued on executed by Parrott M. Hardy before the delivery of the said policies to W. P. Hardy, the plaintiff? Answer: "Yes."
2. Was the first premium on Policy No. 63215 paid by the plaintiff before or at the time of delivery of said policy to W. P. Hardy, the plaintiff? Answer: "Before."
3. Was the premium on Policy No. 62846 paid by the plaintiff before or at the time of the delivery of said policy to W. P. Hardy, the plaintiff? Answer: "At the time."
4. Was the premium on Policy No. 62845 paid by the plaintiff before or at the time of the delivery of said policy to W. P. Hardy, the plaintiff? Answer: "At the time."
5. Did the plaintiff pay all the premiums, including the first premium on said policy? Answer: "Yes."
6. Did the plaintiff pay the first premium on said policy in pursuance of an agreement that the said policies should be assigned and transferred to him? Answer: "Yes, as testified to by (435) plaintiff and witness McGee."
7. Were the policies of insurance sued on in this action delivered to Parrott M. Hardy, deceased? Answer: "Yes." *Page 344 
8. Did the plaintiff participate in the issuance of the policies of insurance sued on in this action? Answer: "No."
9. Were the assignments of said policies made in good faith and not as a cover for any fraudulent speculations in the life of Parrott M. Hardy, deceased? Answer: "Yes."
10. Did the plaintiff at the time of the assignment of said policies have an insurable interest in the life of Parrott M. Hardy? Answer: "Yes."
11. In what sum, if any, is plaintiff entitled to recover of defendant? Answer: "$3,000, with interest from the _________ day of 19 ___"
There are forty-five exceptions in the record, of which twenty-eight bear upon evidence introduced to prove that the plaintiff had an insurable interest in the life of the insured, or upon instructions in regard thereto.
In the view we take of this case, these exceptions are immaterial, but if material, it was competent to show that an affectionate relationship existed between them, as tending to establish good faith on the part of the plaintiff and to rebut the idea that he had entered into a wagering contract, and was merely speculating in the life of his uncle.
It was also competent to show by the agent of the defendant the circumstances attending the signing of the applications for insurance, and the delivery of the policies to the plaintiff, and for the plaintiff to testify that he knew nothing of the transaction before the policies and the assignment of them were brought to him by the agent. This evidence related to the question of good faith, and as to whether (436) there had been a delivery of the policy to the insured.
The other exceptions are directed principally to the effect of the evidence, the defendant contending that on the whole evidence the policies were not delivered to the insured, and, if delivered, that they were not valid, because it was a wagering contract.
The verdict in this case, rendered on competent evidence and under correct instructions, establishes the fact that the plaintiff did not participate in the issuance of the policies, and that the assignments to him were made in good faith and not as a cover for any fraudulent speculation in the life of the insured, and it is not denied that the defendant, with a knowledge of the facts, received the premiums from the plaintiff for four years.
Under these circumstances, the defendant ought to be required to pay, unless the contract is one condemned by law. *Page 345 
In Crosswell v. Assn., 51 S.C. 116, the Court, while discussing wagering contracts of insurance, says: "A sound public policy requires the enforcement of contracts deliberately made, which do not clearly contravene some positive law or rule of public morals. It is surely not a sound policy to permit insurers to contract to insure the lives of persons, receive premiums therefore as long as the insured, the beneficiary, or the assignee will continue to pay, and then, when the time comes for the insurers to pay what they agreed to pay, allow them to escape their contract on the ground of want of insurable interest in the life of the insured, unless it clearly appears that such contracts are pernicious and dangerous to society. Courts should not annual contracts on doubtful grounds of public policy. In such matters it is better that the Legislature should speak first"; and in Grabbs v. Ins. Co.,125 N.C. 396, Justice Douglas announces the same principle. He says: "We think the rule is well settled that where an insurance company, life or fire, issues a policy with full knowledge of existing facts which by its terms would work a forfeiture of the policy, the insurer must be held to have waived all such conditions, at least to the extent of its knowledge, actual or constructive. It can not be permitted to (437) knowingly issue a worthless policy upon a valuable consideration."
We come then to the consideration of the question whether the facts of this case, which are practically uncontroverted, require us to declare the policies void. They do not impose this duty on us, if the policies were delivered to the insured and were valid in their inception.
Justice Hoke, speaking for the Court, so declared the law on the former appeal in this case, reported in 152 N.C. 288, as follows: "We consider it, however, as established by the great weight of authority, that where an insurant makes a contract with a company, taking out a policy on his own life for the benefit of himself or his estate generally, or for the benefit of another, the policy being in good faith and valid at its inception, the same may, with the assent of the company, be assigned to one not having an insurable interest in the life of the insured; provided this assignment is in good faith, and not a mere cloak or cover for a wagering transaction."
The question we have to determine is not, Was there a delivery to the insured, but, Was there evidence of the delivery, fit to be submitted to the jury? If there was evidence, it was for the jury to find the fact.
The failure of the insured to pay the first premium was evidence upon the question, but not conclusive. The local agent of the defendant knew all the facts, and the information he had was given to the State agent of the defendant and to the defendant itself. With this information, *Page 346 
the defendant sent the policies and the form for the assignments to the local agents for the purpose of having the contract completed, and received the premiums for four years. We think this is beyond question a waiver of the provision in the policy that it shall not be in force until the first premium is paid.
In Kendrick v. Ins. Co., 124 N.C. 317, the Court says: "The authorities are numerous and quite uniform that the acknowledgment in the policy of the receipt of the premium estops the company to test the validity of the policy on the ground of nonpayment of the (438) premium. In so far as it is a mere receipt for money, it is only prima facie, like other receipts, and will not prevent an action to recover the money if not in truth paid; but in so far as it is a part of the contract of insurance, it can not be contradicted by parol to invalidate the contract, in the absence of fraud in procuring the delivery of the policy. The rule is thus stated in Biddell on Insurance, sec. 1128: `As a general rule, it has been held in the United States that while such a receipt will prevent the insurer from proving the premium was unpaid in order to show the policy was void from its inception, it may be contradicted in order to show, on a suit for premium, that no payment had been made.'"
In Gwaltney v. Assur. Co., 132 N.C. 928, Chief Justice Clark, speaking for the Court, thus states the rule: "The authorities are numerous that a general agent can waive any stipulation in the policy, notwithstanding a clause in the policy forbidding it, for he can waive that clause as well as the other."
Justice Brown states the same principle in another way in Rayburn v.Casualty Co., 138 N.C. 381: "Where the policy is delivered, there being no allegation or proof of fraud, the delivery is conclusive proof that the contract is completed and is an acknowledgment that the premium was properly paid during good health." Also, Justice Connor in Rayburn v.Casualty Co., 141 N.C. 431.
It is also clear, we think, that the payment of the first premium by the plaintiff does not invalidate the policies, as it appears that he did not procure the issuance of the policies, and knew nothing of the transaction before the policies and assignments were brought to him.
In Shea v. Benefit Assn., 160 Mass. 291, speaking of a policy to one not having an insurable interest, the Court says: "The relationship in which Margaret stood to John, and the matters disclosed in her testimony, tended strongly to show that the policy or certificate of membership was obtained in good faith, and not for the mere purpose of speculating on the hazard of a life in which she had no interest; and if so, the contract was valid if made with him, though made for her (439) benefit, and though the premiums were paid by her"; and in *Page 347 
 Ins. Co. v. Blodgett, 8 Tex. Civ. App. 48, it is said: "It is urged by appellant that the policy is void for the reason that the beneficiary named in the policy had no insurable interest in the life of the insured, and the policy was speculative and wagering on the part of the plaintiff. The policy recited that it was issued upon the application of Mrs. Lucinda J. Downey; J. A. Blodgett was named as the beneficiary, and his relation as grandson was therein disclosed. It is not shown that any fraud or deception was practiced upon the insurance company by which it was deceived as to the real party to the contract of insurance. It was proven that the beneficiary was to pay the premiums; this was known to the company; indeed, his note was taken for the first premium, and the policy was issued by the company with full knowledge of the facts as to the relation of the parties, and of their respective interests and undertakings under the contract. Under this state of facts, the company should not be permitted to deny that the policy speaks the truth as to the party who made the application, and with whom the contract of insurance was made."
"The mere payment of the premiums by the plaintiff is not conclusive that the policy was taken out by him." Langdon v. Ins. Co., 14 Fed., 275;Valton v. Ins. Co., 22 Barb., 35; Ins. Co. v. France, 94 U.S. 565.
If, therefore, the failure of the insured to pay the first premium and the payment thereof by the plaintiff do not render the policies void, it seems to follow that they were valid at their inception if they were delivered to the insured. The jury has found that they were so delivered.
Was there sufficient evidence to be submitted to them? To constitute a good delivery, it is not necessary that the policies should have been in the actual possession of the insured.
"Delivery is largely a question of intention, as evidenced by words or acts. The requisites of a valid delivery may be said to be three: (1) There must be an intention on the part of the person executing the policy to give it legal effect as a completed instrument; (2) this intention must be evidenced by some word or act indicating (440) that the insurer has put the instrument beyond his legal control, though not necessarily beyond his physical control; and (3) the insured must acquiesce in this intention." Vance on Insurance, p. 169.
"It was not necessary to the completion of the contract that the policy should be actually delivered to the insured. The issuance of a policy in accordance with the terms agreed on, and its transmission to the agent for unconditional delivery to the insured, is tantamount to a delivery." Porterv. Ins. Co., 70 Vt. 508.
The doctrine that it is the intention of the parties that controls, and not the transfer of possession, has been applied in numerous cases *Page 348 
to deeds and insurance policies. Ins. Co. v. Sibley, 158 Ill. 414; Blackv. Sharkey, 104 Col., 280; Martin v. Bates,50 S.W. 39 (Ky.); Kelsa v.Graves, 64 Kan. 777; Arrington v. Arrington, 122 Ala. 514; Ins. Co. v.Babcock, 104 Ga. 72.
In Waters v. Annuity Co., 144 N.C. 669, the same principle is declared as follows: "It is not required at all that the acceptance of the company should be indicated by a manual delivery of the policy to the insured."
If we apply the tests laid down, we think the evidence of delivery is plenary.
There was evidence practically uncontroverted, that the agent of the defendant solicited the insurance; that the insured told him he would take the policies and his children would pay the premiums; that he afterwards told the agent his children could not pay the premiums and that he wished the plaintiff to have the policies; that the agent told him that the plaintiff did not have an insurable interest, but that he could take the policies, payable to his estate, and assign them to the plaintiff; that the insured applied for the policies payable to his estate, and they were so issued by the defendant; that the agent informed the defendant of these facts, and with this knowledge the defendant sent the policies and blank assignments to its agent; that the assignments were witnessed by the agent; that the policies and assignments were (441) delivered to the plaintiff, who was ignorant of the matter and acted in good faith, and that for four years the defendant continued to receive the premiums with full knowledge, and was silent as to the objection it now raises.
Under these circumstances, it would be unjust to the plaintiff and the defendant alike to say that it was not the intention of the parties for the policies to be delivered to the insured, and that they should be completed binding contracts. We deem it not improper to say that the evidence shows that the local agent and the State agent acted in good faith throughout the transaction. We find no error.
Cited: Johnson v. Ins. Co., 157 N.C. 108; Godfrey v. Ins. Co.,169 N.C. 239. *Page 349