### MRS. EMMA D. BURCH v. PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY.

(Filed 2 December, 1931.)

1. **Insurance J b—Held: policy was forfeited for nonpayment of premium, local agent not having authority to charge premiums on his books.**

    Where a policy of accident insurance provides for renewal from year to year upon prepayment of the stipulated annual premium to the local agent in cash, and that the local agent should have no authority to modify or change the conditions of the policy, an extension of credit given solely by the local agent for the payment of a premium for a renewal period, done without knowledge of the company, will not bind the latter, and evidence of a course of dealing between the local agent and the insured tending to establish such extension of credit by the local agent is insufficient to resist the insurer's motion as of nonsuit, there being no evidence of ratification by the insurer by acceptance of the premium after the due date, or otherwise. .

2. **Insurance K a—The distinction between agreements made by local agent at inception of policy and after it is in force is pointed out.**

    There is a distinction between agreements relating to a modification of the terms of a policy made by the local agent at the inception of the policy and such agreements made by him after the policy has been in force in regard to whether the insurer is bound thereby.

CIVIL ACTION, before *Shaw, J.,* at April Term, 1931, of PERSON.

On 17 July, 1923, the defendant executed and delivered to J. T. Burch, plaintiff's intestate, an accident insurance policy. The plaintiff is the wife of said J. T. Burch and is the beneficiary named in said policy of insurance. The policy provided for the payment of $1,000 in the event of accidental death caused by an automobile, which said face amount was automatically increased at the rate of ten per cent per annum each year the policy was left in force. The premium had been paid on the policy prior to 17 July, 1929. The insured was killed in an automobile accident on 31 July, 1929, and the plaintiff beneficiary brought suit for $1,500. The defendant denied liability upon the policy, alleging that the premium due on 17 July, 1929, had never been paid. The policy was a renewable contract and was kept in force by the payment of $5.00 annual premium. The policy provided that: "This policy may be renewed by the payment in advance of the annual premium of $5.00, and a receipt signed by the secretary and countersigned by a licensed agent of the company shall be the only evidence binding upon the company of the payment of a renewal premium. . . . This insurance contract is in force only for the term mentioned in the renewal receipt, and the amount of premium specified herein must be actually paid in cash to a duly licensed and authorized agent of the company; otherwise this receipt is null and void. If payment of the renewal premium shall be made and accepted after the date of expiration of the policy, the acceptance of such premium by the company or by any of its duly authorized agents shall reinstate the policy, but only to cover accidental injury thereafter sustained. . . . No person except the president or the secretary of the company is authorized to change or modify the insurance contract in any particular or to waive forfeiture."

The facts with respect to the payment of the premium are substantially as follows: J. S. Walker was the local agent of defendant at Roxboro, and was engaged in the general insurance business, writing fire, automobile liability, health and accident insurance. Burch, the deceased, procured fire, automobile liability insurance from said Walker as well as the accident policy in controversy. The local agent renewed Burch's policies as they became due and charged the premiums on his books whether he had seen Burch or not. The said agent Walker testified as follows: "As to this particular policy, from time to time, he said renew it. As a rule, he had it charged. Perhaps the first and second year it was not charged. Mr. Burch would come and tell me if he wanted his policy renewed, or ask me if I would renew it and carry it until he could pay it. . . .. I do not recall that I ever renewed this particular policy at any time without his request. It was his custom

with regard to renewing this policy, to first speak to me about it. I had no right to give him an official receipt until the policy was paid for. . . . I do not recall that I ever renewed the policy unless he had requested it. . . . The premium on this policy was due 17 July. Before this premium became due he did not give me any instructions about it at all. When the policy became due I did not do anything about it. When I reported it to the company I marked him dead, because he had been killed before that, that is, before the report was made. I did not charge the premium on my books to Mr. Burch before he was killed. My bookkeeper charged it. It was not under my instructions. I did not give the bookkeeper authority to charge this on my books. She just did it voluntarily in the routine work of the office." The evidence further disclosed that the bookkeeper of the local agent on 1 August, the day the deceased died, sent out a monthly statement to the deceased in the regular routine of office work for insurance charges amounting to $26.04, which said bill included the premium on the policy in controversy. Thereafter, on 19 September, nearly three weeks after the death of Burch, an attorney for his estate paid to the local agent said bill of $26.04. The local agent, Mr. Walker, was not in the office at the time the payment was made, and the check was received by the bookkeeper. As soon as Walker, the local agent, discovered that the premium had been paid he offered to return the money to the estate of the injured, but the tender was declined. The evidence further disclosed that the insurance company sent blank receipts to the local agents and list of the names of those carrying policies, and the local agent was authorized to collect premiums and to deliver the official receipt upon receiving the money.

It was admitted in open court that the local agent had no authority to change the provisions of the contract of insurance.

Upon the foregoing facts the trial judge entered a judgment of nonsuit, from which judgment plaintiff appealed.

*Nathan Lunsford for plaintiff.*
*Luther M. Carlton for defendant.*

BROGDEN, J. The question of law presented by the record is whether the local agent of defendant was authorized to extend credit to the insured in the payment of premium due on 17 July, 1929, and thus keep the policy alive.

At the outset it must be borne in mind that there is a vital and fundamental distinction between liability arising from agreements made by an agent of an insurance company at the inception of the contract and that arising from agreements made by the agent with the insured after

the contract has taken effect, resulting in the modification of the terms and conditions of the written engagement of the parties. This distinction was pointed out in *Foscue v. Insurance Co.,* 196 N. C., 139, 144 S. E., 689.

The plaintiff relies upon *Home Ins. Co. v. Gilliam,* 13 N. E., 118, but it appears that the question involved in that case grew out of the delivery of a policy of insurance containing a recital that the first premium had been paid. Furthermore, the company received the money. There are many cases in North Carolina and elsewhere built upon the same idea as that announced in the *Gilliam case, supra.* However, that line of cases is not applicable to the facts disclosed by the present record. In the case at bar the policy had been in force for a period of five years and the contract expressly provided that "the amount of premium specified herein must be actually paid in cash to a duly licensed and authorized agent of the company; otherwise this receipt is null and void."

There are many cases disclosing an effort to pay the premium in merchandise or things of value other than cash, and the overwhelming weight of authority denies the validity or the efficacy of such payments. *Turlington v. Ins. Co.,* 193 N. C., 481, 137 S. E., 422; *Tomsecek v. Ins. Co.,* 88 N. W., 1013 (where the agent agreed to accept meat from the market of insured in payment of a premium); *Allen v. Metropolitan Life Ins. Co.,* 229 N. W., 879 (where the agent undertook to have the premium credited on the purchase price of a washing machine sold by the insured); *Cohen v. New Zealand Ins. Co.,* 120 Atlantic, 417 (where the agent agreed to take shirts and underwear in payment of premium). Furthermore, it has been held that if an insurance agent holds for collection the note of insured given in payment of a premium that such agent has no authority to extend the time of payment of such note. *Bank of Commerce v. N. Y. Life Ins. Co.,* 54 S. E., 643; *Iowa Life Ins. Co. v. Lewis,* 187 U. S., 335, 47 L. Ed., 204. This point, however, is not before the Court for a decision and is referred to merely to indicate the trend of judicial thinking upon the general subject.

There are two cases directly in point. The first is *Cayford v. Metropolitan Life Ins. Co.,* 91 Pac., 266. In this case it is written: "Authority to collect premiums does not imply authority to extend the time for the payment of such premiums, or to waive a forfeiture, resulting from nonpayment." The other case is *Farmers' & Mechanics' Benevolent Fire Ins. Association v. Horton.* This case was decided by the Supreme Court of Appeals of Virginia on 17 September, 1931, and is reported in 160 S. E., 315. The Court wrote: "It is next said that where credit is extended to an agent, who in turn extends it to the insured, no forfeiture can be enforced for nonpayment of premiums, and we are cited, as

sustaining that proposition, to 32 Corpus Juris, 1312; *Perea v. State Life Ins. Co.,* 15 N. M., 399, 110 Pac., 559; Cooley's Briefs on Insurance, Vol. 1, p. 484; and *Wytheville Insurance Co. v. Teiger,* 90 Va., 277, 18 S. E., 195. With it we have quarrel. In such cases the company looks to its agent for payment, and he extends credit to the insured at his peril. Here there was no such course of dealing. No agent was ever asked to pay, or expected to pay, a dollar which he did not collect. When tickets are turned over for collection, a memorandum of them and of their amount is made, and so, loosely speaking, it might be said that an agent is charged with them; but such a statement would be misleading. A man cannot possibly be charged with something which he is never expected to pay, and which he will never be asked to pay. Upon the facts, the rule invoked has no application."

It is contended that the evidence discloses a course of dealing between the insured and the agent of the insurer with respect to the payment of premium, but there is no evidence that the defendant Insurance Company had any knowledge of such course of dealing other than such knowledge as would be imputed to it through the local agent, nor is there evidence of ratification, as defined by law, on the part of defendant. The premium was not charged to the local agent by the Insurance Company, and such agent was expressly prohibited by the terms of the contract from accepting anything but cash in the payment of the premium or from delivering the receipt until the premium had been paid. The receipt was never delivered, and while an attempted payment was made after the death of the insured to the bookkeeper of the local agent, such payment was never recognized or ratified by the defendant. Indeed, the local agent, upon the facts presented, had no authority to waive the terms of the policy or extend credit for the premium, and, therefore, in the absence of evidence tending to invoke the principle of ratification, the ruling of the trial judge was correct.

Affirmed.