**LIFE & CASUALTY INSURANCE COMPANY OF TENNESSEE,**
Appellant,

v.

**Margaret W. GURLEY,** Appellee.

**No. 7094.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 18, 1955.

Decided Jan. 5, 1956.

Beverly C. Moore, Greensboro, N. C. (Julius C. Smith, and Smith, Moore, Smith & Pope, Greensboro, N. C., on brief), for appellant.

Hubert Humphrey, Greensboro, N. C. (L. P. McLendon, and Brooks, McLendon, Brim & Holderness, Greensboro, N. C., on brief), for appellee.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and R. DORSEY WATKINS, District Judge.

DOBIE, Circuit Judge.

Suit was commenced in the Superior Court of Alamance County, North Carolina, by Margaret W. Gurley, as beneficiary under a life insurance policy, against Life & Casualty Insurance Company of Tennessee (hereinafter called the Company). Upon petition of the Company, the case was removed to the United States District Court for the Middle District of North Carolina.

Margaret W. Gurley sought to recover $20,000 as the beneficiary of a mortgage cancellation policy on the life of her deceased husband, Henry T. Gurley (hereinafter called Gurley). The Company denied the policy had ever been issued and delivered to the applicant Gurley and denied that the first full premium had been paid. In short, the Company contended that no contract of insurance had ever been consummated between it and Gurley.

The District Court, sitting without a jury, awarded Gurley's widow, as beneficiary of this insurance policy, the sum of $20,000, less $23.31, the unpaid portion of the first premium. From this judgment the Company has appealed to us.

These questions are presented for our consideration:

(1) Was the contract of insurance in force at the time of the death of the insured? This involves several subsidiary questions.

(2) Is there evidence to support the District Judge's Finding of a constructive delivery of the policy?

(3) Is the provision respecting payment of the first premium as a condition precedent properly applicable to the facts of this case?

(4) If so, is there evidence of waiver of this provision or of estoppel to support a Finding to this effect by the District Judge?

(5) Did the evidence establish that deceased was not "insurable" on September 18, 1952?

We find ourselves in accord with the District Court and affirm its judgment.

The Company's agent, W. G. Ware, solicited Henry T. Gurley to take a Mortgage Retirement Insurance plan of life insurance; on July 17, 1952, Gurley executed an application requesting such a

plan. At this time, Gurley gave checks, payable to the Company, totalling $99 which was represented by the agent and stated in the application to be the first full premium; Ware executed and delivered to Gurley the Company's printed form of receipt. These checks were cashed by the Company and deposited to its account on July 19, 1952. The application and a report of a medical examination were sent by the Company's agents to its Home Office at Nashville, Tennessee. The Company approved the application and ordered the issuance of a policy for the plan and the amount of insurance applied for by Gurley. The Company applied a "Class B" rate which increased the quarterly premium to $122.-31 and declined to grant a request for waiver of premium in the event of disability.

The Company issued Policy No. 493585 August 1, 1952, to Gurley and fixed the date of the second quarterly premium as November 1, 1952. The policy issued to Gurley was acted upon or reviewed in five different departments of Company's Home Office. It was a fully executed policy containing all the schedules and provisions applicable to this particular insured; the signatures of the President and Secretary of defendant; an effective date of August 1, 1952, at which date it was carried on defendant's books, and the 41-year endowment period calculated, as well as the due date of future premiums; and a serialized number by which it appears on many different records of the Company. In short, it received the same Home Office action accorded to all other similar policies in full force and effect.

The Company delivered this policy to the agent Ware at Burlington, North Carolina, for transmission to Gurley. No mention was made in the letter of transmittal or in any of the communications or other statements between the officials at the Home Office or between the Home Office and the District Manager and the soliciting agent of the necessity of obtaining the additional $23.31 before placing the policy in effect, or that the policy was issued subject to prepayment of the remainder due. No instructions were given to soliciting agent Ware to collect the remaining portion before he placed the policy with Gurley.

When officials of defendant accepted Gurley's application and issued Policy No. 493585 and delivered it to the soliciting Agent for transmission to Gurley, it was known to them that Gurley had not paid in the full amount of the quarterly premium fixed by the rate in which he was placed.

When presented with the policy, Gurley protested against being rated in Class B and the policy was returned to the Home Office by District Manager Sessoms on August 16, for a reconsideration of the rating. Agent Ware told Gurley that he was covered by the insurance so he need not worry. The Home Office reaffirmed its original decision and the policy was returned to Ware. After that Ware conferred with Gurley on several occasions and urged him to agree to the rates fixed.

On September 18, 1952, Ware conferred with Gurley regarding the policy and it was agreed that Ware would take up the rate question with a Vice-President of the Company who was to attend a district meeting in Greensboro, North Carolina, that night, to determine if the rate could be reduced if less insurance were taken or under the circumstances. That night on his return, pursuant to the arrangement with Gurley and in response to two earlier calls for Ware that night from Gurley, Ware called Gurley and informed him that the Company would not issue a policy for any amount at a lesser rate, and that the Company's decision with respect to the rate was final. Gurley, in the presence of plaintiff, his wife, then told Ware that he was tired of fooling around and that he had decided to take the policy and that he accepted the policy as it was. Ware offered to bring the policy out to Gurley's home that night but was told not to bother since it was late; Ware stated that he would bring the policy by on his way to the office the following morning.

The next morning, September 19, 1952, around 6 A.M., Gurley died of a heart

attack. Ware, in a conversation with Mrs. Gurley and H. T. Gurley, Jr., the insured's son, both on the date of Gurley's death and on the day of the funeral, stated that Gurley had accepted the policy over the phone the night of September 18 and that he, Ware, had started to bring the policy out to Gurley's home that night, after the telephone conversation referred to, and was sorry he had not, so there would have been no question about it.

The only one of these facts controverted by any of the Company's witnesses was the content of the telephone conversation between Gurley and Ware on the night of September 18. The Trial Judge believed plaintiff's witnesses in preference to Ware's wavering and contradictory testimony of these points. On the other hand, the testimony of Mrs. Gurley and H. T. Gurley, Jr. was clear and credible and was not impeached in a single detail. On the basis of this substantial evidence, the District Judge made his Findings of Fact on this important issue.

One further fact, as noted by the District Judge, was "that when the policy was transmitted to the district manager, there was enclosed the official receipt to be countersigned by agent Ware and a voucher for commissions showing Ware's commissions were $55.04 and Pike's (Ware's superintendent) were $6.12. These and the policy were in Ware's possession on September 18th at the time of the telephone conversation."

The Company contends that the application, premium receipt and policy required (1) delivery of the policy and (2) payment of the first full premium, both during the lifetime and continued insurability of the applicant. It is asserted that these are valid and enforceable conditions precedent to the validity of the policy, neither of which was complied with here by the applicant Gurley and the agent Ware; that there was no waiver, and in addition, that on September 18, 1952, applicant Gurley was not insurable.

We are impressed with the fact that had agent Ware, after his telephone con-

versation with Gurley around ten o'clock on the night of September 18, 1952, then gone to Gurley's house and handed him this policy, there could have been no doubt as to its validity or effectiveness. Gurley was advised that $99 was the first full premium at the time of making his application, and that if paid then, this policy would become effective and protect him when the Company approved the application. The application was approved, a policy issued, but at a Class B rate with an increased quarterly premium.

No mention was made by the Company to its agent that delivery could be made only upon the receipt of the additional $23.31. In fact, no mention of this sum was made by agent Ware to Gurley on the night of September 18, 1952. Without any hesitation, Gurley then accepted the policy as written, thereby becoming obligated and bound. Gurley had paid four-fifths of the total first premium at the increased rates. He had turned down Ware's offer to deliver that night, and in turn stated that the first thing in the morning would be soon enough. Can it be doubted that at that moment Ware held this policy as a custodian for Gurley? Viewing all of these circumstances, we refuse to engage in the extreme technicalities requested by the Company to hold otherwise.

The District Judge found that there was a constructive delivery of the policy. Applying North Carolina law, which is controlling in this case, we note that in that State delivery has been held to be largely a matter of intention and that physical transfer of possession of the policy is not essential. Hardy v. Aetna Life Insurance Co., 154 N.C. 430, 70 S.E. 828; Waters v. Security Life & Annuity Co., 144 N.C. 663, 57 S.E. 437, 13 L.R.A.,N.S., 805. See, also, although involving fire insurance, Dawson v. Concordia Fire Insurance Co., 192 N.C. 312, 135 S.E. 34; Roberta Mfg. Co. v. Royal Exchange Assurance Co., 161 N.C. 88, 76 S.E. 865.

As stated in Waters v. Security Life & Annuity Co., supra, 57 S.E. at page 439:

"It is not required at all that the acceptance by the company should be indicated by a manual delivery of the policy to the insured, for, as said in some of the cases cited, 'It is not the physical possession of the policy, but the legal right thereto, which is determinative of the question.' \* \* \* And where a policy which complies with the application has been unconditionally delivered, in the absence of fraud, it is held to be conclusive evidence that the contract of insurance exists between the parties. Rayburn v. [Pennsylvania] Casualty Co., 138 N.C. 379, 50 S.E. 762; \* \* Grier v. [Mutual Life] Insurance Co., 132 N.C. 542, 44 S.E. 28 \* \*."

Here the contract became complete upon Gurley's unconditional acceptance of the policy issued at the higher rating class, leaving nothing unsettled as to its terms.

■ The District Judge noted the similarity on the question of delivery between this case and National Life & Accident Co. v. Holbrook, 5 Cir., 100 F.2d 780, certiorari denied 307 U.S. 624, 59 S. Ct. 822, 83 L.Ed. 1502. There the policy was not manually delivered because a key to the safe was unavailable, yet the requirement of delivery was held to be satisfied. The District Judge in the instant case concluded under these facts, that delivery was intended by the parties and that under North Carolina law, it was a legal delivery. Since delivery is largely a question of factual determination, Hardy v. Aetna Life Insurance Co., supra; Waters v. Security Life & Annuity Co., supra, we are of the opinion that there was an adequate basis for the District Judge's finding that there was here a constructive delivery of this policy.

■ In Hardy v. Aetna Life Insurance Co., 154 N.C. 430, 70 S.E. 828, 832, the Court quoted with approval this extract from Vance on Insurance, page 169:

" 'Delivery is largely a question of intention, as evidenced by words or acts. The requisites of a valid delivery may be said to be three: (1) There must be an intention on the part of the person executing the policy to give it legal effect as a completed instrument; (2) this intention must be evidenced by some word or act indicating that the insurer has put the instrument beyond his legal control, though not necessarily beyond his physical control; and (3) the insured must acquiesce in this intention.' "

■ The question of the prepayment of the first full premium is precluded, we feel, by waiver on the part of the Company, in its actions and in those of its agent, Ware. Under North Carolina law, delivery of an issued policy constitutes a waiver, in the absence of fraud, of such a written requirement. Grier v. Mutual Life Insurance Co., 132 N.C. 542, 44 S.E. 28; see, also, Pender v. North State Life Insurance Co., 163 N.C. 98, 79 S.E. 293. Counsel have failed to cite North Carolina decisions making a distinction between "actual" and "constructive" delivery on this specific question, other than our language in Curtis v. Prudential Insurance Co., 4 Cir., 1932, 55 F.2d 97 which was prior to Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and is of little aid here.

Apparently, a soliciting agent such as Ware, in North Carolina, has the power to waive certain written conditions and requirements connected with the inception of the insurance contract and the payment of the first premium though not as to subsequent premiums nor as to the coverage or the operation of the policy. Foscue v. Greensboro Mutual Life Insurance Co., 196 N.C. 139, 144 S.E. 689; Burch v. Provident Life & Accident Insurance Co., 201 N.C. 720, 161 S.E. 313.

■ We find, however, sufficient support for the District Judge's finding of waiver from the facts. The policy was issued by the Company as a "completed instrument," sent to its agent for transmission to the applicant with no warning that the agent must first insist upon the payment of the remaining one-fifth of the premium and the agent made no mention of the unpaid portion of the premium upon his constructive delivery of the policy.

The Company had the use for some ten weeks of the $99 premium paid by Gurley and made no tender of its return until after his death. All the evidence pointed to a complete disregard on the Company's part of insisting upon the compliance by Gurley with this condition. Where, as here, the applicant had paid the first full premium on the policy as applied for, where such a policy was issued, though at a slightly higher premium, and constructively delivered, as found by the District Court, we conclude that the actions of the Company constituted a waiver on its part and that it may not now insist as a condition precedent to the validity of the policy, that the $23.31 unpaid portion was not paid.

■ We find no merit in the Company's contention that Gurley was uninsurable on September 18, 1952. The record is devoid of any substantial evidence to support that contention. Indeed, the evidence of Dr. Fewell, the Company's witness, favored Gurley rather than the Company.

Counsel for the Company have made a forcible argument for reversal, relying primarily on Curtis v. Prudential Ins. Co., 4 Cir., 55 F.2d 97, and North Carolina Bank & Trust Co. v. Pilot Life Insurance Co., 206 N.C. 460, 174 S.E. 298. We find neither case controlling on the facts before us.

The Bank case, which impressed the District Judge, is clearly distinguishable upon the facts. There, the agent made it clear to the applicant that the insurance was not in effect until he paid the premium, none of the premium had been paid, and the insurance company had no knowledge that the first full premium had not been paid.

In the Curtis case there was no evidence that the company had already received into its treasury all that it would be entitled to out of the first premium and that the remainder in reality belonged to the agent. Moreover, the Company had use of Gurley's money for a considerable period of time and never during his lifetime tendered it back. All these facts are especially important in view of the concluding paragraph of Circuit Judge Northcott's opinion in the Curtis case, 55 F.2d at page 100:

> "There is no evidence whatever that the officials of the company had any notice that the local agent was collecting weekly installments from the insured, or that the agent remitted same or any part thereof to the company. Had there been any such evidence, and had the company had notice of the situation as it actually was, an entirely different case would be presented for our consideration."

We think, then, that the facts of this case, under the applicable North Carolina law, justify the conclusion that here there was an unconditional, constructive delivery of the policy in suit, which was in effect and binding on the Company at the time of Gurley's death. The equities of the case seem to favor this conclusion.

The judgment of the District Court is affirmed.

Affirmed.

R. DORSEY WATKINS, District Judge (dissenting).

As I am deeply concerned with the effects of the majority opinion as a precedent, I feel constrained to dissent, and to state briefly my reasons. So far as possible, I will avoid any restatement of facts.

The policy in suit contained the following provisions, among others:

> "Premiums. This policy shall not take effect until the first premium shall have been paid in cash and the contract delivered and accepted during the lifetime of the Insured * * * "

> "Entire Contract * * * Only the President, a Vice-President, Secretary, and Assistant Secretary, Actuary or Treasurer has power on behalf of the Company to make or modify this contract.
>
> * * * * *
>
> "The Company's agents have no authority to alter or amend this Pol-

icy, to accept premiums in arrears, or to extend the due date of any premium."

The first premium on "this policy" was $122.31. Only $99.00 had been paid. The policy itself, in addition to requiring prepayment, recognizes the difference between delivery and acceptance, and requires both as conditions precedent. The policy in question was never actually delivered.

These provisions seem to me to have been deliberately designed to prevent the possibility of recovery in a case such as this, and to be adequate for that purpose. Their validity has been frequently upheld. Ray v. Security Trust & Life Insurance Co., 1900, 126 N.C. 166, 35 S.E. 246; Whitley v. Peidmont & Arlington Life Insurance Co., 1874, 71 N.C. 480; Ormond v. Fidelity Life Association, 1887, 96 N.C. 158, 1 S.E. 796; Sturgill v. New York Life Insurance Co., 1927, 195 N.C. 34, 141 S.E. 280; North Carolina Bank & Trust Co. v. Pilot Life Insurance Co., 1934, 206 N.C. 460, 174 S.E. 298; Curtis v. Prudential Insurance Co., 4 Cir., 1932, 55 F.2d 97.

In the Curtis case, where the policy requirements as to conditions precedent were less stringent than those of the policy in suit, the same contentions of a "constructive delivery of the policy or a waiver of delivery, and the first premium having been paid or waived" were advanced, but rejected, 55 F.2d at page 99. Judge Northcott at some length pointed out the impracticality of binding insurance companies "by every act or statement of a local agent; especially one whose duty is mainly that of soliciting or collecting." The reasoning and result in the Curtis case were expressly approved in the Pilot case. I am therefore at a loss to understand how there is any problem under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

In nevertheless allowing recovery, the majority relies upon certain propositions of law, and characterizations of fact.

Law

A. *Constructive delivery*. Hardy v. Aetna Life Insurance Co., 1911, 154 N.C. 430, 70 S.E. 828; Waters v. Security Life & Annuity Co., 1907, 144 N.C. 663, 57 S.E. 437; Dawson v. Concordia Fire Insurance Co., 192 N.C. 312, 135 S.E. 34, and Roberta Mfg. Co. v. Royal Exchange Assurance Co., 161 N.C. 88, 76 S.E. 865, are cited as holding that delivery is largely a matter of intention and that physical possession of the policy is not essential. As I read these cases, none of them supports the conclusion that there was a constructive delivery in this case.

In Hardy, supra, the jury found in answer to a specific issue that the policies were issued to the insured. The evidence conclusively showed that the insured had signed assignments; the policies and assignments were sent to the company, and then physically "delivered" to the assignee.

In the Waters case, the quotation in the majority opinion shows that there had been an unconditional (not a constructive) delivery. The language omitted from the body of the majority quotation is:

"Accordingly, a binding acceptance can be, and frequently is, indicated by the mailing of a letter in due course containing an unconditional acceptance, or by sending a policy to an agent with instructions for *unconditional delivery, where there is no contravening stipulation in the contract itself.*" (Emphasis supplied.)

What the court had to decide in the Waters case was whether, where the insured returned to the company a validly issued policy, with a "proposal to cancel", there had been an acceptance of this proposal by the company. The point involved was clearly summarized by the Court (57 S.E. at page 440–441):

"If, therefore, the intestate, acting under an erroneous impression, sent the contract back to the company with the statement that it was

not the policy he ordered, and he did not intend to pay the notes, the company could have made this proposition a binding contract by an unconditional acceptance signified in some definite manner; but, until they did this, the act of the intestate in sending back the policy was nothing more than a proposal to cancel, and, if he died before acceptance, the negotiation was off, and the contract of insurance remained."

The Dawson case holds (135 S.E. at page 35):

"A policy of insurance, in form as required by statute, may be delivered upon condition that it shall not become effective until the happening of some subsequent event. 'In such cases, the policy is of no binding effect until the condition is fulfilled.'"

The Roberta case (76 S.E. at page 868) recognized that there was to be delivery after acceptance.

The majority, as well as the District Judge below, cite National Life & Accident Co. v. Holbrook, 5 Cir., 1939, 100 F.2d 780, as similar to this case on the question of delivery. The majority in the Holbrook case do not so describe their decision. They expressly state that the only question was one of acceptance, and that therefore it was unnecessary to consider "whether manual tradition was necessary for delivery, or if it could be accomplished by an intention, coupled with appropriate conduct, to have the agent retain possession of the policy for the insured until it came manually into his possession." (100 F.2d at page 783).

These five cases are in no way factually comparable with the case on appeal, and certainly appear to be no authority for a finding of constructive delivery. As above noted, this court, on the other hand, in the past, has expressly refused to permit a claim of constructive delivery to be made in the face of policy prohibitions. Curtis v. Prudential Insurance Co. of America, 4 Cir., 1932, 55 F.2d 97, approved, North Carolina Bank & Trust Co. v. Pilot Life Insurance Co., 1934, 206 N.C. 460, 174 S.E. 298.

B. *Waiver of prepayment of premium.* Having found a constructive delivery, the majority then find that such delivery constituted a waiver of the policy requirement of prepayment of the first premium. Grier v. Mutual Life Insurance Co., 1903, 132 N.C. 542, 44 S.E. 28, relied upon by the majority, was a case in which there had been an actual delivery, and a tender in cash of the first premium. The court expressly raised the question (44 S.E. at page 29), whether a contract would have existed in the absence of actual delivery. Pender v. North State Life Insurance Co., 1913, 163 N.C. 98, 79 S.E. 293, expressly limits waiver of prepayment of premiums to conduct of the company, or of an agent having authority to execute and issue contracts, and even then only in the case of an "absolute delivery". This is clearly stated as follows (79 S.E. at page 295):

"The doctrine is clearly stated in Vance on Insurance, at page 178: 'Even though the parties have expressly agreed that the contract shall not be deemed complete until payment of the premium in cash and in full, this stipulation may be waived by the insurer or any of its agents having competent authority. As a general rule, any agent having power to execute and issue contracts on behalf of the insurer has power to waive a condition of prepayment. And an absolute delivery of the policy by such an agent, without payment of the premium, under such circumstances as will justify an inference that credit is to be given, will constitute a waiver of a condition of prepayment.'"

Foscue v. Greensboro Mutual Life Insurance Co., 1928, 196 N.C. 139, 144 S.E. 689 and Burch v. Provident Life & Accident Insurance Co., 1931, 201 N.C. 720, 161 S.E. 313, cited by the majority as apparently holding that a soliciting agent, such as Ware, can waive written conditions and requirements connected with the inception of the insurance contract and payment of the first premium,

were not so construed by the North Carolina courts.

In North Carolina Bank & Trust Co. v. Pilot Life Insurance Co., 1934, 206 N.E. 460, 174 S.E. 298, 300, the exact question posed, and answered in the negative was:

"Can a soliciting agent of a life insurance company deliver a policy and waive the payment of the first premium or extend credit for the payment thereof when both the application and the policy provide that the contract of insurance shall not become effective until the first premium has been paid; and, further, that only an executive officer as specified shall have authority to alter or modify the contract?"

The court in the Pilot case referred to Foscue and Burch as holding, (174 S.E. at page 300):

"the local or soliciting agents as such have no authority to extend credit to the insured in the payment of premiums or waive the payments provided in the policy or extend the time of payment thereof. * * *"

On the law I would hold that the policy required an actual delivery; that there had been no delivery of the policy, constructive or otherwise; that prepayment in full of the first premium was required, and there was no payment in full or waiver thereof; and that Ware, a soliciting agent, had no authority to waive any of the provisions of the policy.

### Facts.

A. *Waiver as to prepayment of first premium.* The majority three times refers to the fact that in transmitting the policy with the higher rates to Ware, the company did not in so many words instruct Ware that he was not to deliver the policy until Gurley had paid the remaining portion of the premium; i. e., had paid the first premium in full. From this is imported a waiver of the policy terms.

I do not understand how the failure of a principal, in each piece of correspondence with an agent, to repeat the caution that the agent is expected to perform his duty, can be construed as a waiver of the right of the principal to the performance of such duty. The policy called for prepayment in cash, and for delivery and acceptance during the lifetime of the insured. The receipt accompanying the policy, to be countersigned by the agent, was for the full premium of $122.31. In this I see no evidence of waiver, but on the contrary, every indication that the company expected Ware to abide by the policy provisions.

For waiver, it would be necessary for the company to advise Ware that despite the requirements of the policy and receipt, he could ignore them, and do something they did not authorize. There is no such evidence. To convert failure expressly to forbid a breach of duty into an authorization of such breach is a tour de force that does not carry persuasion.

B. *Absence of tender of return of premium.* In partial support of its conclusion, the majority asserts that the company had had the use of Gurley's money, and had never tendered it back. If such were in fact the case, I would still be unable to see how this met the requirements of payment in full, and delivery. To me, $99.00, even if on deposit with the company, is not $122.31. The company did not treat the $99.00 as free funds or as premium on an issued policy. The testimony is unchallenged that the $99.00 was deposited and held in the suspense file "pending the final acceptance and delivery of the policy"; it was never transmitted to the Home Office; no reserve was ever set up against the policy; the policy was treated as "an outstanding untaken policy and shown in our suspense file as such".[1]

As to the question of tender back of the $99.00 to Gurley when he initially refused to accept the policy with the higher premium rate, there are two con-

---

1. Compare this positive evidence of nonwaiver with the majority's inference from a negative.

siderations. First, the receipt given Gurley for the $99.00 contained a provision that this amount "shall be *refunded upon request* if the application is denied or if a policy is issued other than as applied for and is not accepted by the applicant." (Emphasis supplied.) Here, Gurley applied for standard rating with waiver of premiums, and refused to accept the policy written at B rates and without waiver of premiums. There is no evidence of a request by Gurley for the return of the $99.00, or of any refusal.

Secondly, only if "tender" is used by the majority in the most technical form of actual production of the $99.00 in cash in Gurley's presence (see 86 C.J.S., Tender, § 30; cf. Bane v. Atlantic Coast Line Railroad Co., 171 N.C. 328, 88 S.E. 477) can it be said that there was no tender. Ware said he could give Gurley back the money, and Gurley said he wanted the policy.[2]

C. *Acceptance by Gurley.* The majority states that in his telephone conversation with Ware on September 18, 1952, Gurley "accepted the policy as it was"; that he "accepted the policy as written." The policy "as written" called for prepayment in full of the first premium, which admittedly was not made; and delivery during his lifetime. The policy itself as "accepted" required prepayment in cash, delivery and acceptance, during the lifetime of the insured.

In Ray v. Security Trust & Life Insurance Co., 1900, 126 N.C. 166, 35 S.E. 246, the company had received an application, replied that it had been approved and a policy was being issued; and sent the policy to its agent, who had not manually delivered it. The premium was $33.80, of which $23.40 had been paid. Plaintiff contended that there had been a

meeting of the minds, and that a contract existed. The court pointed out that the policy contained a provision that "no insurance shall be in force until the delivery of the policy to, and payment of the first premium * * *", and said, in language peculiarly applicable here, (126 N.C. at page 169, 35 S.E. at page 247):

"Of course, the minds of the contracting parties met as effectually on this provision as on any other part."

Gurley did not accept *a* policy; he accepted *the* policy, with its concomitant rights—and conditions precedent.

In my opinion the judgment of the District Court should be reversed, and judgment entered for the appellant-defendant.

---

2. Appellee's testimony was as follows:

"I know that Mr. Ware had asked him if he wanted his money back some time in August and Mr. Gurley had said no."

"Was that your statement at the time?

"A. What I meant was that he had never really pushed him to return the money, because he wanted to deliver the policy and I know my husband wanted the policy.

"Q. But you say Mr. Ware offered to give him his money back?

"A. He said 'I can give you your money back, I don't want to, I want you to take the policy.' and Mr. Gurley said, 'I want the policy'. That is right."